MIDLAND NATIONAL BANK of Kansas City v. BRIGHTWELL, Assignee of SLATER SAVINGS BANK, Appellant.

Division Two, February 21, 1899.

1. **Principal and Agent**: BANKS: COLLECTIONS. When a note or draft is sent by one individual or bank to another bank for collection and a remitting of the proceeds to the sender, the relation of principal and agent is created, and not that of creditor and debtor.

2. ——: ——: ——: KIND OF PAYMENT. But the receiving bank in such case, unless otherwise specially authorized, can receive in payment nothing but money, or that which by common consent is considered and treated as money.

3. ———: ———: ———: PROVISIONAL CREDIT. The bank which receives a note or draft for collection, does not owe the amount thereof to the sender until collected, and though it may enter a credit thereof on its books such credit may be treated as provisional if the draft given in payment is afterwards dishonored, and it may cancel the credit.

4. ———: ———: ———: ASSIGNMENT: TRANSMUTATION. An assignee of a bank for the benefit of creditors takes no higher or better right to the assigned assets than his assignor had. If the assignor stood in a fiduciary relation to certain assets, so does his assignee. And if the trustee or bailee wrongfully mixes the trust fund with his own, so that his assets are thereby enlarged, the amount of the trust fund so converted will be taken out of the assigned estate and turned over to the *cestui que trust* before general creditors will be permitted to share therein.

5. ———: ———: ———: TRANSFERRING OF MERE CREDITS: NO IN- CREASE OF REAL ASSETS: PREFERRED CREDITORS. But the mere can- celling of a liability to one debtor and the transferring of it to another on the books of a bank, does not increase its assets. So that where one bank has sent to another certain drafts for collection, and the bank to whom they were sent "collected" them, by charging the accounts of depositors against whom the drafts were drawn, after being authorized to do so by such depositors, and then sending to the sending bank its own draft, which was never paid, and it clearly appears that the amount of the money or the real assets of the receiving bank were in no wise augmented by this mere transferring on the book of the bank of a naked liability, it will be held that the bank sending the drafts is not entitled to be preferred over other creditors, although this method of charging the amount of the drafts against the depositors, by their direction, thereby decreased the lia- bility of the bailee bank to the amount of the drafts.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED.

LESLIE OREAR, A. F. RECTOR and ROBT. M. REYNOLDS for appellant.

(1) Under the facts stated in the agreed statement of facts, the lower court erred in holding that the plaintiff was entitled to a preference over the general creditors of the

Slater Savings Bank in the funds in the hands of the assignee. The relation existing between the plaintiff bank and the Slater Savings Bank was simply that of debtor and creditor. The direction of the plaintiff bank to the Slater Savings Bank to remit by check on another bank shows clearly that the intention of the parties was not to create the relation of trustee and *cestui que trust,* but is evidence of an agreement that the Slater Savings Bank might use the money collected and might pay the plaintiff bank by its check on another bank. Any agreement or understanding or course of dealing between banks engaged in the collection business, which is recognized by the law as a department of the general banking business, whereby the collecting bank is to use the funds which might be collected upon such items remitted to it for collection and substitute its own obligation instead, destroys all idea of trust. Akin v. Jones, 93 Tenn. 353; Wetherell v. O'Brien, 140 Ill. 146; Jockusch v. Towsey, 51 Tex. 130; Nonotuck Silk Co. v. Flanders, 87 Wis. 237; Bent v. Barnes, 90 Wis. 630; Bowman v. Bank, 9 Wash. 614; Bank v. Davis, 114 N. C. 343; Bank v. Armstrong, 140 U. S. 50; Bank v. Latimer, 67 Fed. Rep. 27; Bank v. Dowd, 38 Fed. Rep. 172; Massey v. Fisher, 62 Fed. Rep. 958. (2) Because of the fact that not one dollar of new assets actually passed into the hands of the Slater Savings Bank, but that the sundry items making up the $2,650 was represented by charging the accounts current of the customers of the Slater Savings Bank and crediting the account of the Midland National Bank, thereby shifting the credits from one account to another, that the assets of the Slater Savings Bank were, therefore, not augmented or increased, and for that reason the relation of the parties was simply that of debtor and creditor. Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 514; Bank v. Latimer, 57 Fed. Rep. 67; Bank v. Dowd, 38 Fed. Rep. 172; Massey v. Fisher, 62 Fed.

Rep. 958; Phillips v. Overfield, 100 Mo. 466; Little v. Chadwick, 151 Mass. 110; Bank v. Weems, 69 Tex. 489; Calvin v. Gleason, 105 N. Y. 256; Bank v. Ins. Co., 104 U. S. 54.

LATHROP, MORROW, FOX & MOORE for respondent.

(1) When collection items are sent to a bank, that bank has a right to receive only money in payment in the absence of special authority or usage. The transfer of credit on the books of a bank is as complete payment as though the money was paid in over the counter. A collecting bank must follow instructions as to the manner of collecting and remitting. An insolvent bank holds items sent for collection in trust, and the proceeds of such collections remain as a trust fund in the hands of the receiver or assignee. A claim for the payment of such proceeds as a preferred claim out of the assets of the assigned estate should be allowed by the assignee as a matter of legal right. Morse on Banks and Banking (3 Ed.), secs. 247 and 248; Haslett v. Bank, 19 Atl. Rep. 55; Ward v. Smith, 7 Wall. 447; Thompson v. Sav. Inst., 8 Atl. Rep. 97; Hoffman v. Bank, 46 N. J. Law, 604; Sweeney v. Easter, 1 Wall. 166; Hook v. Pratt, 78 N. Y. 371; People v. Bank, 96 N. Y. 32; Brooke v. King, 104 Ia. 713; Bank v. King, 57 Pa. St. 202; Peak v. Ellicott, 30 Kan. 156; Davenport Plow Co. v. Lamp, 80 Ia. 722; Independent Dist. of Boyer v. King, 80 Ia. 497; Nurse v. Satterlee, 81 Ia. 491; Bank v. Gas Co., 36 Minn. 75. (2) The facts controlling this case show conclusively that these collection items were sent as a separate and independent transaction of the principal with its agent, to be handled in accordance with instructions. The draft for $2,650 represents a part of the proceeds of such collections, collected by the agent by decreasing its liability to its depositors, and in this way most effectively swelling or augmenting its assets. The agreed statement of facts says all of the items were collected. If collected, the proceeds, in

whatever form, necessarily swelled the assets to that extent, and if the money itself was not moved from one compartment in the bank to another, credit, which stood for the money, was, and the existing assets of the agent were just as surely increased or augmented thereby.   So that respondent is entitled to a preference for that part of the proceeds represented by the draft for $2,650, sent in violation of its instructions. Pomeroy v. Benton, 57 Mo. 531; Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 514; Bank v. Sanford, 62 Mo. App. 394; I X L Brick Co. v. Schoeneich, 65 Mo. App. 283; Ins. Co. v. Kimble, 66 Mo. App. 370; Leonard v. Latimer, 67 Mo. App. 138; Ulrici v. Boeckeler, 72 Mo. App. 661; Paul v. Draper, 73 Mo. App. 566; Charlotte Iron Works v. Bank, 34 Hun. 26; Howard v. Walker, 21 S. W. Rep. 897.   (3)   The wrongful act of the agent for collection in this case was the violation of its instructions.  Bank v. Ins. Co., 104 U. S. 54; Bank v. Beal, 50 Fed. Rep. 355; Foster v. Rincker, 35 Pac. Rep. 470; Bank v. Weiss, 67 Tex. 331; Bank v. Melhorn, 8 Ohio Cir. Ct. Rep. 191; Anheuser-Busch Brewing Ass'n v. Farmers' and M. Bank, 53 N. W. Rep. 1037; Cragie v. Hadley, 99 N. Y. 131; Jones v. Kilbreth, 31 N. E. Rep. 346.

GANTT, P. J.—This cause was heard and decided by the circuit court of Saline county, on the following agreed statement of facts:

"It is hereby stipulated and agreed by and between the parties hereto that the facts in this case are as follows, and that this agreed statement may be read as evidence in this case.

"It is admitted that from and after the 12th day of December, 1894, and for some time prior thereto, the Midland National Bank was and is now a banking corporation duly organized under the laws of the United States with reference

to national banks, and doing a general banking business at Kansas City, Missouri.

"That on December 12th, 1894, the Midland National Bank sent collection items to the Slater Savings Bank of Slater, Missouri, with instructions to remit in Kansas City exchange. These items aggregated $6,726.44, a large part of which consisted of drafts drawn on the Citizens Stock Bank of Slater, Mo. All of these items were collected by the Slater Savings Bank, either by charging the accounts of depositors against whom the drafts were drawn, after being authorized to do so by such depositors and crediting the account of the Midland National Bank, or by a clearing of the day's business with the Citizens Stock Bank. In settlement of the balance for the day against it, the Citizens Stock Bank gave the Slater Savings Bank its draft on St. Louis for $4,134.31. The Slater Savings Bank indorsed this draft and forwarded it, together with its own draft on St. Louis for $2,650, to the Midland National Bank on account of the collection items above mentioned. Neither of these drafts were paid, and both the Slater Savings Bank and the Citizens Stock Bank of Slater failed December 17th, 1894, and their assets are in the hands of their respective assignees. The Midland National Bank has not received payment for any portion of the collection items above mentioned, represented by these drafts for $4,134.31 and $2,650. At the time of the failure of the bank, the assignee found in the vault the sum of $449 in cash. And it is also admitted that said draft of $2,650 was forwarded to plaintiff on December 14th, 1894, and was duly presented for payment on December 17th, 1894, when payment was refused and said draft was protested for nonpayment, and also that the said defendant as assignee had in his hands at the date of the trial sufficient assets to pay the draft of $2,650 and interest thereon in full."

No other evidence was offered at the trial.

Thereupon the defendants prayed the court to declare the law to be "that under the agreed statement of facts herein, plaintiff is not entitled to charge the above check of $2,650 as a trust fund against the Slater Savings Bank, and that the plaintiff is not entitled to a preference in its favor over the general creditors of the Slater Savings Bank, but that the said sum of $2,650 may be allowed as a general claim against the assets of said bank in the hands of the defendant as assignee thereof."

Which declaration of law the court refused to give and defendant duly excepted to said refusal.

The circuit court then rendered a decree that the said sum of $2,650 collected by the Slater Savings Bank was received as a trust fund, and was held as such when said bank failed, and that the assignee held it in the same way, and the court further found there were sufficient assets in the hands of the assignee to satisfy said claim and directed it paid with interest. From this decree the assignee appeals to this court.

I. The question involved in this appeal upon the agreed statement of facts is whether the Midland National Bank is a preferred creditor or a mere general creditor of the Slater Savings Bank. Certain principles must be considered as settled. When a note or draft is sent by one individual or bank to another bank for collection and to remit the proceeds to the sender, the relation of principal and agent is created, and not that of creditor and debtor.

The receiving bank's duty as a collecting agent is to present the note or draft for payment, and unless a special authority is otherwise shown, to receive in payment nothing but money, or that which by common consent is considered and treated as money. [Levi v. Bank, 5 Dill. 104; 2 Morse on Banks and Banking, sec. 567; Libby v. Hopkins, 104 U. S. 307; People v. Bank, 96 N. Y. 32.]

Having received the note or draft for collection it does not owe the amount thereof to the sender until collected, and

though it may credit in its books therefor such a credit may be treated as provisional if the paper is afterwards dishonored and it may cancel the credit.    [Armstrong v. Bank, 9 L. R. A (Ky.) 553.]

Equally plain is the law that an assignee for benefit of creditors takes no higher or better right to the assigned assets than his assignor possessed, and if the assignor stands in a fiduciary relation to the assets that relation is cast upon the assignee.

It is, moreover, undeniable that equity will follow a fund through any number of transmutations, and preserve it for the owner so long as it can be identified and this court has extended this doctrine, and held that when a trustee or bailee wrongfully mixed trust money with his own, so that it can not be distinguished as to what portion is trust money and what part private funds, equity will follow the money by taking out of the estate of the trustee or bailee or his insolvent estate, the amount due the *cestui que trust*.    [Harrison v. Smith, 83 Mo. 210.]

And in Stoller v. Coates, 88 Mo. 514, it was held that the general assets of an insolvent bank having been enlarged and increased by the unlawful conversion of a trust fund, the bailor or *cestui que trust* was entitled *pro tanto* to have the amount of the converted fund declared and enforced as a preferred demand against the assigned estate.    In going to this length unquestionably this court took a position in advance of the English chancery and most of the States of this Union, but with the soundness of this position we are entirely satisfied.    The creditors of an insolvent person or corporation are entitled to subject his estate to their demands, but justice and equity give them no right to appropriate the estate of another which he holds in trust.

With these acknowledged principles as our guide, the question recurs whether upon the agreed facts of this case, the plaintiff bank has established its claim to a preference.

If it can be said that its collection items augmented the assets of the Slater Savings Bank it would seem that there is no escape from the conclusion that it constituted a trust fund. The contention of the plaintiff is predicated upon this one statement: "It appears that all the items sent for collection on December 12th, 1894, were collected by the Slater Savings Bank, partly by charging the accounts of depositors after being authorized to do so by such depositors, and crediting the Midland National Bank therewith. By thus decreasing the liability of the Slater bank to such depositors the assets of the bank were thereby augmented and increased to the extent of such collection items which items so collected amounted to much more than $2,650." Whereas, the assignee insists that this charging the account of one depositor and crediting another is a mere matter of bookkeeping; that not one dollar of money was actually collected by the Slater bank to swell its assets; that by the process resorted to it merely attempted to transfer its indebtedness from certain of its depositors to the Midland bank, and then gave its own exchange, knowing that it had no money to its credit in St. Louis with which it could be honored. The agreed facts fail to show that the Slater Savings Bank had any funds on hand at the time it made this exchange on its books, with which it could have met the checks of the depositors on whom the collections were sent except $449. In other words, if the Slater Savings Bank had received these collections on parties who were not its depositors, it is clear it would not have owed the amount thereof to the Midland National Bank until they were collected, and even had it in anticipation of such collection credited the Midland bank with the sum thereof, no principle of law or equity would have precluded it from canceling such credit because in fact it had not received the money. In this case it did not receive any money and there was no augmentation of its assets and the agreed statement shows no funds on hand at the time of the book

entries except $449, not a dollar of which is shown to have been received from the depositors owing the several collections.

When this court has spoken of assets being increased by the reception of a trust fund heretofore, it clearly meant actual assets, not the mere juggling of accounts whereby debts due depositors were transferred to become a debt due a correspondent who sent collections.

We are not disposed to hold that the mere canceling of a liability to one debtor and the transferring it to another on the same books is an actual increase of assets.

For these transfers to have such an effect there must have been funds in the bank upon which such transfers could have operated. The transfer of a mere naked liability to one creditor to another on the bank books added not a dollar to the Slater bank's assets; when the transaction was finished it was a debtor in the same amount but to a different person in a different capacity, and had not received an additional dollar whereby the dividends of the other creditors would be enlarged. Upon the argument we were inclined to the view that plaintiff had probably shown itself entitled to a preference, but upon more mature consideration we see no reason why plaintiff should be preferred to other creditors of this bank.

The doctrine invoked rests upon the fact that the trust fund has gone to swell the assets of the insolvent bank, while in this case no inference can be drawn that the assets in the hands of the receiver were the product of the collections sent by plaintiff, but the contrary plainly appears. The bank was hopelessly insolvent, and received not a dollar of new assets.

Justice and equity will only be conserved in this case by distributing the assets *pari passu* and by denying plaintiff the preference it seeks.

The judgment of the circuit court is reversed. SHERWOOD and BURGESS, JJ., concur.