# BANK OF POPLAR BLUFF v. FRANK C. MILLS-PAUGH, Commissioner of Finance, in Charge of Liquidation of Bank of Puxico.

In Banc, March 15, 1926.

1. **BANK: Customer's Draft: Collection: Principal and Agent.** The drawing of a draft upon a bank in which the drawer has a deposit, made payable to another bank and delivered to it with directions to collect the amount thereof from the bank in which the drawer has the deposit and place the amount to the credit of the drawer, and the sending of the draft by the bank to which it was delivered to the other bank for collection and remittance, created between the two banks the relation of principal and agent, and not the relation of creditor and debtor.

2. ———: ———: ———: ———: **Continuation of Relation: Failure to Pay.** If a draft is sent, for collection and remittance, by one bank to another in which the drawer has a deposit, and the sendee remits by draft drawn on a trust company which is not paid, the sendee continues to be the agent of the sender. The remittance by draft or check does not change the relation between the two banks from principal and agent to that of creditor and debtor.

3. ———: ———: **Principal and Agent: Funds with Which to Pay: Trustee: Preference.** Where a draft, drawn against a bank in which the drawer had a deposit for the amount, was delivered to another bank with direction that it be collected and the amount placed to her credit, and the bank sent it to the bank upon which it was drawn and that bank at the time had sufficient money on hand with which to pay it, equity will consider that as done which ought to have been done, and that, in contemplation of law, the bank upon which the draft was drawn presented it to itself and collected it, and thereafter held the proceeds as the agent of the sending bank and in trust for it, and the amount of the draft became segregated from its general funds; and if the bank, instead of remitting the money, made remittance by a draft upon a trust company in which it did not have sufficient funds to pay it and which therefore refused to pay and protested it, the relation of creditor and debtor between the two banks did not arise, but the bank on which the draft was drawn, in contemplation of law, had already collected it and held the amount as trustee for the other bank, and said other bank, although the bank on which it was drawn later failed and the Commissioner of Finance charged the draft to the drawer's account, is entitled to a preference over general credits of the defunct bank, and to compel the Commissioner to pay it as a preferred claim.

Banks and Banking, 7 C. J., Section 265, p. 608, n. 3 New; Section 277, p. 614, n. 52; Section 301, p. 626, n. 77. Equity, 21 C. J., Section 190, p. 200, n. 6; Section 198, p. 203, n. 56 New.

Transferred from St. Louis Court of Appeals.

REVERSED *(with directions).*

*Oliver & Oliver* for appellant.

(1) Where a note or draft is sent by one individual or bank to another bank for collection and remittance of the proceeds to the sender the relation of principal and agent is created and not that of creditor and debtor. Upon that fundamental underlying principle of law and equity this claim should be allowed as a preferred claim. Midland Natl. Bank v. Brightwell, 148 Mo. 358. (2) "The Missouri doctrine . . . is, that where a trustee, agent or bailee wrongfully mixes trust money with his own so that it cannot be distinguished which is his own, and which is trust money, and becomes insolvent, equity will follow the trust money by taking out of the insolvent estate of the fiduciary the amount due the *cestui qui trust,* although it cannot be identified or separated from the other fund with which it is fixed." Paul v. Draper, 158 Mo. 200; Stoller v. Coates, 88 Mo. 514; Harrison v. Smith, 83 Mo. 210; Bank v. Brightwell, 148 Mo. 365; Schulz v. Bank of Harrisonville, 246 S. W. (Mo. App.) 614. (3) When a bank receives from its correspondent a check upon itself, it is the agent for its correspondent to make presentation to itself. Hilsinger v. Trickett, 36 Ohio St. 286, Anno. Cases, 1913-D, p. 421. (4) This check for $5000 was accepted by Bank of Puxico. It kept it three days and then sought and pretended to pay it by the issuance, on December 14th ten days before it closed its doors, of its own check on the Bank of Gorin. When the check was accepted by the Bank of Puxico that immediately operated as an assignment of its funds to that extent under our statute. Sec. 975, R. S. 1919. (5) The net result of the transaction of payment and the receipt thereof by the collecting bank was the same as though it had drawn the currency into its own hands by means of a check, and

had, thereupon, delivered the same to the collecting bank in payment of the sight draft. (6) The plaintiff is entitled to preference. British & Am. Mtge. Co. v. Tibbetts, 63 Iowa, 468; Messenger v. Carroll Trust & Savings Bank, 187 N. W. (Iowa) 546; Page County v. Rose, 130 Iowa, 296; Kansas State Bank v. First State Bank, 62 Kan. 788; State Natl. Bank v. First Natl. Bank, 124 Ark. 531; Natl. Life Ins. Co. v. Mather, 118 Ill. App. 491; Arnoz v. Bingham, 55 Hun, (N. Y.) 653; Peoples v. Merchants Bank, 92 Hun, 159.; Cunningham v. State, 115 Ark. 176; Capital Natl. Bank v. Cold Water Natl. Bank, 49 Neb. 786.

*John A. Gloriod* for respondent.

(1) No trust fund or agency relation existed between appellant and respondent. Appellant stands in the same position as Mrs. Reichert, the drawer of the draft in question, and the relation is that of creditor and debtor. American Bank of De Soto v. People's Bank, 255 S. W. 943; Utley v. Hill, 155 Mo. 232; Allen Grocery Co. v. Bank, 192 Mo. App. 476. (2) No trust fund was created in this case, neither was there an increase of the assets of the Bank of Puxico, nor was there any reduction of its liabilities. American Bank of De Soto v. People's Bank, 255 S. W. 943; Midland Natl. Bank v. Brightwell, 148 Mo. 358; 7 C. J. 675.

WHITE, J.—This case reached the Springfield Court of Appeals on appeal from a judgment for defendant in the Circuit Court of Stoddard County. The Court of Appeals reversed the judgment, but deeming the conclusions reached to be in conflict with the ruling of the St. Louis Court of Appeals in American Bank v. People's Bank, 255 S. W. 943, certified the case to this court.

The opinion of BRADLEY, J., who spoke for the Springfield Court of Appeals, so clearly presents the reasons for the conclusions, which we think to be sound, that we adopt his language as follows:

"This is an action to have allowed as a preferred claim a demand against the Bank of Puxico, which failed and was placed in the hands of the Commissioner of Finance for liquidation. On trial below the claim was allowed as a general claim, but was denied preference. From the judgment plaintiff appealed.

"The cause was tried upon an agreed statement of facts, which agreed statement in substance is as follows: December 11, 1923, Ethel Reichert had on deposit in the Bank of Puxico $5,000, and on that date she drew a draft upon said Bank of Puxico, payable to plaintiff bank. This draft was delivered to plaintiff with direction to collect said $5,000 from the Bank of Puxico and place it to her credit in plaintiff bank. December 12th plaintiff bank presented said draft to the Bank of Puxico and demanded immediate payment, and said draft was accepted by said Bank of Puxico. The Bank of Puxico failed and refused to pay said draft or any part thereof throughout the 12th, 13th, 14th, and 15th of December, although during that time it paid checks, drafts and claims drawn upon it by others. On December 15th the Bank of Puxico drew and mailed to plaintiff its draft dated December 14th for $5,-000, on the Citizens Trust Company of Gorin, Missouri, payable to the order of plaintiff. Said trust-company draft was received by plaintiff December 16th, and was forwarded in the usual way and presented to the drawee, the Citizens Trust Company of Gorin, on December 19th, but payment was refused. The draft on the trust company was protested, and on December 19th plaintiff was advised by telegram of non-payment. On same day, December 19th, plaintiff again demanded of the Bank of Puxico payment of the Reichert draft drawn on December 11th, and said Bank of Puxico promised to pay it, but did not do so. Again on December 20th and 21st plaintiff demanded payment and each time the Bank of Puxico promised, but failed to pay.

"From December 12th, when the Reichert draft was first presented and accepted, to December 22nd the Bank

of Puxico continued to receive deposits, and pay numerous demands amounting in the aggregate to many times $5,000. There was in the till of the Bank of Puxico and to its credit in other solvent banks more than $5,000 on December 12th when the Reichert draft was first presented and accepted, and that condition continued to exist up to and including December 20th. The books of the Bank of Puxico showed at all times mentioned herein that it had on deposit with the Citizens Trust Company of Gorin more than $5,000, but the books of the trust company showed only $640.46, and it is agreed that $640.46 is correct.

"December 22nd the Bank of Puxico ceased to do business, but on December 26th the Commissioner of Finance, or the deputy in charge, charged the account of Ethel Reichert with the $5,000 drawn by her on December 11th.

"The act of the plaintiff bank, under the existing facts, in sending to the Bank of Puxico the Reichert draft was equivalent to designating the Bank of Puxico as the agent of plaintiff to present the draft to itself, collect it, and send the money to plaintiff. In other words, the act of the plaintiff bank in sending the Reichert draft to the Bank of Puxico for collection and remittance created between the plaintiff bank and the Bank of Puxico the relation of principal and agent. [Midland Nat. Bank v. Brightwell, 148 Mo. 358, 49 S. W. 994, 71 Am. St. 608; Capital Nat. Bank v. Coldwater Nat. Bank, 69 N. W. (Neb.) 115, 59 Am. St. 572; State v. Bank of Commerce, 85 N. W. (Neb.) 43, 52 L. R. A. 858; State Nat. Bank v. First Nat. Bank, 124 Ark. 531, 187 S. W. 673; Goodyear Tire & Rubber Co. v. Hanover State Bank, 204 Pac. (Kan.) 992, 21 A. L. R. 677; Federal Reserve Bank of Richmond v. Bohannan, 127 S. E. (Va.) 161; Federal Reserve Bank of Richmond v. Peters, 123 S. E. (Va.) 379; Board of Supervisors v. Prince Edward-Lunenburg County Bank, 121 S. E. (Va.) 903; Nyssa-Arcadia Drain. Dist. v. First Nat. Bank, 3 Fed. 648.]

"In Midland National Bank v. Brightwell, supra, the court said: 'When a note or draft is sent by one individual or bank to another bank for collection and to remit the proceeds to the sender the relation of principal and agent is created, and not that of creditor and debtor.'

"When the agent, the collecting bank, has collected the item sent to it for collection and remittance, it holds the proceeds, according to the great weight of authority, prior to remittance, as trustee for the sender, unless the two banks, the sender and the collecting bank, are transacting business with each other on what is known as the reciprocal accounts method, about which we shall have more to say, infra. If the money is sent in remittance all the authorities agree that the transaction is final, and the forwarding bank's title to the money after it leaves the hands of the collecting bank is superior to all claims against the collecting bank. [Federal Reserve Bank v. Peters, supra, l. c. 382.] The divergence of opinion, when the reciprocal-accounts method does not exist, is upon the legal effect of the collecting bank remitting by draft instead of sending the money. Some authorities hold that the act of remitting by draft changes the theretofore relation of principal and agent to that of debtor and creditor. [Akin v. Jones, 27 S. W. (Tenn.) 669, 25 L. R. A. 523, 42 Am. St. 921; Sayles v. Cox, 32 S. W. (Tenn.) 626, 32 L. R. A. 715, 42 Am. St. 940.] Also some authorities hold that where an item for collection is sent by one bank to another in the usual course of business and without instructions that only the relation of debtor and creditor is created. [United States Nat. Bank v. Glanton, 92 S. E. (Ga.) 625, L. R. A. 1917 F, 600; Union Nat. Bank v. Citizens Bank, 54 N. E. (Ind.) 97; Peters Shoe Co. v. Murray, 71 S. W. (Tex.) 977.]

"Also some cases have been ruled because of a reciprocal-accounts arrangement between the forwarding bank and the collecting bank. [Federal Reserve Bank of Richmond v. Peters, 123 S. E. (Va.) l. c. 382.] The reciprocal-accounts method and the remittance method

313 Mo. Sup.—27.

are described in Federal Reserve Bank of Richmond v. Peters, supra, as follows: 'In order to make collections of checks handled by them banks usually adopt one of two methods, reciprocal accounts, or remittance. Under the reciprocal-accounts method, the collecting bank, upon receipt of payment of the checks, gives credit upon its books to the forwarding bank, and the forwarding bank charges the collecting bank upon its books. They settle from time to time according as the balance accumulates, with the one or the other. Under this method, as soon as the collection is made the relation of the banks is that of creditor and debtor. Under the remittance method the forwarding bank sends the checks to the collecting bank with instructions to collect them and remit immediately. The collecting bank is not authorized to retain the proceeds in its hands and therefore acts only as an agent for the forwarding bank.'

"To hold that the relation of principal and agent, when the reciprocal-accounts course of business does not exist, is changed to that of debtor and creditor by collecting an item sent for collection and remittance, does not appeal to us as sound reason. Neither is it sound, in our opinion, to hold that the relation of principal and agent is changed to that of debtor and creditor by the mere act of remitting by draft instead of sending the cash. Either holding compels the sender of the item to become a depositor, a creditor, in the true sense of the term, of the collecting bank whether such is desired or not. If an item is sent to an individual for collection and remittance, and he collects, but fails to remit or remits by check or draft and the check or draft, for any reason, is not paid, the individual remains the agent of the sender. We can see no reason why the same rule should not apply to a bank.

"We think that the correct and only reasonable and just rule is laid down in 3 Ruling Case Law, page 633, sec. 261, where, in discussing the question of title to the proceeds of collections made by banks, this language is

used: 'These principles must always be borne in mind in considering the question as to the title to the proceeds of collections by banks, as it necessarily follows that, if the title to the paper to be collected passed to the bank, the proceeds of the collection will belong to it, and the bank will be merely a general debtor of the customer; whereas, if the paper was deposited for collection merely, as title thereto remains in the customer, title to the proceeds will not necessarily pass to the bank. When it is finally determined that a deposit of a check or draft was for collection only and vested no title thereto in the bank, the question still remains as to the title to the proceeds of such check or draft. The question may be said to be simply one of the intention of the parties. If they intended that the proceeds should be remitted immediately upon receipt thereof, or if in any other way it can be shown that the parties intended that the proceeds of the check as well as the check itself should remain the property of the owner, such intention will control and the bank will not take title to the proceeds.'

"In support of the rule of intention as stated in the text quoted these cases are cited: Capital Nat. Bank v. Coldwater Nat. Bank, supra; State v. Bank of Commerce, supra; Plano Mfg. Co. v. Auld, 86 N. W. (S. D.) 21; Continental Nat. Bank v. Weems, 6 S. W. (Tex.) 802; McLeod v. Evans, 28 N. W. (Wis.) 173; North v. International Sugar Feed Co., 90 S. E. (N. C.) 295.

"If the notion that a remittance by draft changes the relation from that of principal and agent to that of debtor and creditor is to be the law in this State, then a forwarding bank sending an item for collection under the remittance method will, in order to protect itself or its customer, be compelled to require remittance in cash.

"When the Reichert check was presented by plaintiff to the Bank of Puxico these two facts existed: (1) Ethel Reichert, the drawer of the draft, had on deposit in said Bank of Puxico the sum of $5000; (2) the Bank of Puxico then had in its till and in other solvent banks sufficient

cash to pay this draft. This being true it was the duty of the Bank of Puxico to pay this draft. This cause is in equity, and equity will consider that as done which ought to have been done. [Federal Reserve Bank of Richmond v. Peters, supra.] Hence we proceed on the theory that the draft was in contemplation of law paid when presented. That is, the Bank of Puxico as agent for plaintiff presented said draft to itself and collected the same, and thereafter held the proceeds as the agent of plaintiff, and in trust for plaintiff. In Federal Reserve Bank v. Peters, supra, we find this language: 'It appears from the record that as soon as the draft was sent to the Federal Reserve Bank of Richmond the cashier of the Prince Edward-Lunenburg County Bank deducted the amount thereof from the apparent balance due from the Bank of Commerce & Trusts upon which the draft was drawn, just as if this amount had already been withdrawn from the latter bank and transferred to the Federal Reserve Bank of Richmond. By this act the cashier intended to set apart such a portion of the balance in the Bank of Commerce & Trusts as was necessary to meet the draft sent to the Federal Reserve Bank of Richmond, as he was obligated to do under his contract. Equity regards that as done which ought to have been done. Under such circumstances the draft on the Bank of Commerce & Trusts was an equitable assignment of the funds to the Federal Reserve Bank of Richmond and we will so adjudge.'

"We rule that plaintiff's right to a preference should be determined by the same rules of law as would govern had the Bank of Puxico issued its draft for $5,000 at the time the Reichert draft was presented, upon a solvent bank where it then had on deposit a sum sufficient to pay a draft for $5,000, and that the only reason why said draft was not paid was the failure of the Bank of Puxico prior to the presentation of its draft. Such are the facts in Federal Reserve Bank v. Millspaugh, 275 S. W. 583, which we hand down concurrently with the cause now in hand. On

principle we think plaintiff in the cause at bar should and does occupy the same status as does the plaintiff in Federal Reserve Bank of St. Louis v. Millspaugh, supra. To hold otherwise would place a premium upon the arbitrary conduct of a banker, and permit him, when his bank is limping to its grave, to make fish of one depositor and fowl of another.

"We hold that the Bank of Puxico held the $5,000, which it should have paid to plaintiff, impressed with the trust imposed by virtue of the relation existing between plaintiff and the Bank of Puxico, and that this $5,000 passed into the hands of the Commissioner of Finance still impressed with the trust.

"Relief has been denied in some cases on the theory that the transaction in judgment did not result in augmenting the assets that passed to the receiver or official acting as the receiver of a failed bank. The argument in support of such theory runs about like this: If Ethel Reichert had not drawn her draft on her deposit in the Bank of Puxico, and said bank had failed as it did, it would have failed owing Ethel Reichert $5,000. But instead of owing Ethel Reichert $5,000 when it failed the Bank of Puxico owed plaintiff bank $5,000 evidenced by the draft that it gave plaintiff on the Citizens Trust Company of Gorin. Therefore, there was in effect no difference in the amount of the estate or assets that passed to the Commissioner of Finance; that the assets that passed to the Commissioner of Finance were neither increased nor diminished by the whole transaction. But this argument is not sound. It proceeds upon the theory that the Bank of Puxico simply *owed* plaintiff $5,000; that only the relation of debtor and creditor existed. Such, however, under the authorities we prefer to follow was not the true relation between plaintiff and the Bank of Puxico. The Bank of Puxico *owed* plaintiff $5,000 because it *held* $5,000 of plaintiff's money, as much so as if plaintiff had merely left $5,000 with the Bank of Puxico for safe-keeping sealed and labeled and not intended for deposit.

From the time the Reichert draft was presented and accepted the Bank of Puxico held *plaintiff's* $5,000, and this $5,000 passed to the Commissioner of Finance and thereby increased the funds in his hands $5,000 above the actual assets of the Bank of Puxico. [Federal Reserve Bank of Richmond v. Peters, supra; Goodyear Tire & Rubber Co. v. Hanover State Bank, supra.] The fact that this $5,000 remained commingled and unseparated from the funds of the Bank of Puxico and passed along with the assets to the Commissioner of Finance does not place it beyond the reach of the arm of equity. [Harrison v. Smith, 83 Mo. 210; Midland Nat. Bank v. Brightwell, 148 Mo. 358, supra; Nyssa-Arcadia Drain. Dist. v. First Nat. Bank, supra.]

"It is our conclusion that plaintiff is entitled to have its claim of $5,000 allowed as a preferred claim. As we construe we do not consider our conclusion in conflict with the Midland National Bank case. The facts in that case as appear in the reported opinion are as follows: 'On December 12, 1894, the Midland National Bank sent collection items to the Slater Savings Bank of Slater, Missouri, with instructions to remit in Kansas City exchange. These items aggregated $6,726.44, a large part of which consisted of drafts drawn on the Citizens Stock Bank of Slater, Missouri. All of these items were collected by the Slater Savings Bank, either by charging the accounts of depositors against whom the drafts were drawn, after being authorized to do so by such depositors, *and crediting the account of the Midland National Bank* (Italics ours) or by a clearing of the day's business with the Citizens Stock Bank. In settlement of the balance for the day against it, the Citizens Stock Bank gave the Slater Savings Bank its draft on St. Louis for $4,134.31. The Slater Savings Bank indorsed this draft and forwarded it, together with its own draft on St. Louis for $2,650, to the Midland National Bank on account of the collection items above mentioned. Neither of these drafts was paid, and both the Slater Savings Bank and the Citizens Stock Bank of Slater failed December 17, 1894, and their assets

are in the hands of their respective assignees. The Midland National Bank has not received payment for any portion of the collection items above mentioned, represented by these drafts for $4,134.31 and $2,650. At the time of the failure of the bank, the assignee found in the vault the sum of $449 in cash. And it is also admitted that said draft of $2,650 was forwarded to plaintiff on December 14, 1894, when payment was refused and said draft was protested for non-payment, and also that the said defendant as assignee had in his hands at the date of the trial sufficient assets to pay the draft of $2,650 and interest thereon in full.'

''As appears from the facts in the Midland National Bank case it is distinguishable from the cause at bar in two controlling features: (1) It would seem from the portion of the statement of facts which we have italicized and certain language on page 367 of the opinion as reported in 148 Missouri Report, that the reciprocal-accounts method existed between the Midland National Bank and the Slater Savings Bank; and (2) when the Slater Savings Bank drew its draft, and indorsed the one drawn by the Citizens Stock Bank, it did not have sufficient money in its vaults or elsewhere to pay its own drafts or the one it indorsed. Not having any funds with which to pay, there was no payment *in fact or law made,* and therefore nothing existed upon which a trust could be impressed or claim of an equitable assignment founded. It seems to us that the lack of funds was also one of the decisive features in the Midland National Bank case.

''In American Bank v. People's Bank, 255 S. W. (Mo. App.) 943, the facts as appear from the agreed statement are as follows: 'That plaintiff is and was at all times mentioned in the petition a corporation engaged in and doing a general banking business as De Soto, Jefferson County, Missouri. That on the 30th day of December, 1920, and for a long time prior thereto, defendant was doing a general banking business in the same city. That on the 3rd day of January, 1921 (said bank having been closed for

business on the evening of December 30, 1920), the Bank Commissioner of the State of Missouri took charge of the business and affairs of the defendant bank, after which Frank Dietrich was appointed to assist in liquidating the business and affairs of said bank and is still in charge thereof. That it had been the custom for years between plaintiff and defendant bank to clear or exchange bills and checks which each had received on the other and settle the difference. That on the 30th day of December, 1920 (on which day said People's Bank was closed and has not since resumed business), plaintiff, in the due course of business and for a valuable consideration, had come into possession of and had for collection and settlement a great number of checks drawn by the solvent customers of the People's Bank on their accounts in said bank; all of which customers had to the credit of their accounts amounts sufficient to pay said checks, except $878.92, to which amount said checks were overdrafts, and which amount of overdrafts have since been made good and paid said bank except $229.20. That upon the clearing or exchanging checks on that day the balance due from the defendant bank to the plaintiff bank was $5,414.72. That the plaintiff bank turned over to the defendant bank, in clearing, the checks which it had received against defendant and received from defendant the checks which it had against plaintiff, and the difference made the balance as above stated, for which balance defendant bank delivered to plaintiff a draft on the Central National Bank of St. Louis, which draft was not paid, but protested, and the protest fees are $2.65. That the checks so received by defendant from plaintiff were charged out of the accounts of the various depositors who had drawn them. That plaintiff was not and never had been a depositor in the defendant bank. That on said date and on the day the bank closed there was between six and seven thousand dollars in cash in the defendant bank.

"'That there is now due on account of said balance and protest fees, from defendant to plaintiff, the sum of

$5,417.37. That claim for said amount was properly presented in due time to the said Deputy Bank Commissioner for allowance, which claim was by him allowed.'

''On this state of facts the St. Louis Court of Appeals denied a preference. Counsel for plaintiff bank in the cause at bar, it would appear, are inclined to concede that their contention is in conflict with and contrary to the law as written in American Bank v. People's Bank, supra. Counsel for plaintiff in Federal Reserve Bank of St. Louis v. Millspaugh, supra, says that the case of American Bank v. People's Bank was decided on the theory that the two banks there proceeded under the reciprocal-accounts method. If such was the fact then we are not in conflict, but we cannot say from the statement of facts and the opinion in American Bank v. People's Bank that the two banks in that case were doing business with each other under the reciprocal-accounts method. It seems that the conclusion we have reached, and the law as we have endeavored to state it, are in conflict with the case mentioned. We have given the cause at bar serious and prolonged consideration and are of the opinion that sound reason, substantial justice and the weight of authority support our conclusion.''

The judgment of the trial court is therefore reversed with directions to allow the claim of plaintiff as a preferred claim. All concur, except *Otto, J.,* not sitting.