FARMERS BANK OF DEEPWATER, APPELLANT, v. O. H. MOBERLY, COMMISSIONER OF FINANCE, ETC., RESPONDENT.—78 S. W. (2d) 906.

Kansas City Court of Appeals. January 7, 1935.

*Dewey P. Thatch, Jas. A. Parks, Elmer B. Silvers, Chas. E. Hassett* and *Arnold Conrad* for appellant.

*Haysler A. Pogue* and *Floyd L. Sperry* for respondent.

REYNOLDS, C.—This is an action by a depositor for preference on claim presented for allowance in liquidation of a bank's affairs, in the hands of the defendant finance commissioner, for $2500 of a deposit in said bank, based upon the failure of such bank, while a going concern, to pay the depositor's check drawn and presented therefor.

It appears from the record that the plaintiff is a banking corporation doing business at Deepwater, Missouri, and that it was such and was so doing business at all the dates and times mentioned herein and that, on November 19, 1932, it had on deposit to its credit, subject to check, with the Brinkerhoff-Faris Trust & Savings Company—the said Brinkerhoff-Faris Trust & Savings Company at such time being also a banking corporation and doing business at Clinton, Missouri—the sum of $2714.78. On November 19, 1932, plaintiff drew its check for $2500 upon said Brinkerhoff-Faris Trust & Savings Company against its said deposit and endorsed and delivered the same for collection and for its credit to and with the Drovers National Bank in Kansas City, Missouri. This check, bearing the endorsement of plaintiff and likewise the cancelled endorsement of the Drovers National Bank thereon, was returned to plaintiff by the Drovers National Bank unpaid with the following printed slip attached thereto:

"At a meeting of the Board of Directors of the Brinkerhoff-Faris Trust & Savings Company held on Nov. 21, 1932, the following resolution was unanimously passed: 'Resolved, that a limit of ten dollars per day be placed on all withdrawals of deposits, beginning Tuesday morning, November 22nd, 1932; this action being deemed advisable in order to protect the funds of this institution for the benefit of all depositors.

" 'BRINKERHOFF-FARIS TRUST & SAVINGS CO.,
" 'By H. P. FARIS, President,
" 'PAUL McGEEHAN, Vice-President.
" 'Attest: H. F. Finks, Cashier.'

"This check is being returned under above resolution by the Brinkerhoff-Faris Trust & Savings Company of Clinton, Missouri, and not on account of insufficient funds, and is in no way to be considered a reflection on the maker."

The endorsement of the Drovers National Bank upon said check appears under date of November 21, 1932, while the cancellation of such endorsement appears under date of November 23, 1932. The check was presented to the Brinkerhoff-Faris Trust & Savings Company between such dates on November 22, 1932, and payment thereof refused by it because it was drawn for an amount in excess of the limit of $10 provided by it therefor in its resolution, as above shown.

On February 6, 1933, the assets and affairs of the said Brinkerhoff-Faris Trust & Savings Company were taken in charge by the defendant O. H. Moberly, as finance commissioner of the State of Missouri, for liquidation as an insolvent institution, it having failed and closed its doors. From such date, its assets and affairs have been in process of liquidation in charge of the defendant finance commissioner; and it will be hereinafter referred to, for convenience, as the liquidating bank.

On November 21, 1932, the liquidating bank, by its board of directors, adopted the following resolution, to-wit:

"Resolved, that a limit of ten dollars per day be placed on all withdrawals of deposits beginning Tuesday morning, November 22, 1932; this action being deemed advisable in order to protect the funds of this institution for the benefit of all depositors."

The following also appears from the record in its minutes:

"November 24, 1932. We, the undersigned, do hereby join the other members of the board of directors of the Brinkerhoff-Faris Trust & Savings Company in passing a resolution calling for and declaring a moratorium of thirty days, or failing to get the City Council of Clinton, Missouri, to order such moratorium, to vote to close the doors of the said Brinkerhoff-Faris Trust & Savings Company, and turn it over to the Honorable Commissioner of Finance and that we authorize a special board to record us as present and voting for said resolution. (Signed) H. P. Faris, G. C. Lingle."

It appears that, at such time, said H. P. Faris and G. C. Lingle were, respectively, the president and the vice-president of the said Brinkerhoff-Faris Trust & Savings Company.

On November 25, 1932, upon request of certain officers of the liquidating bank, the city council of Clinton adopted a resolution directing its mayor, the Honorable Floyd L. Sperry, to issue his proclamation declaring a thirty day holiday for all banks and trust companies in the city, beginning the morning of November 25, 1932, which proclamation was accordingly issued, and all such banks and trust companies were requested to observe the same; and it appears to have been observed by the liquidating bank, in part but not fully. It appears from stipulations of the parties in the record that, following the adoption of the resolution of November 21, 1932, the doors of such

bank were opened as usual by its directors and officers on the morning of November 22, 1932, and that it, in charge of such officers and directors, transacted business on that day and the succeeding day, as usual, except it failed to pay checks, if any, against demand deposits where such checks exceeded $10 or where the total amount of the checks drawn against any one account exceeded $10 in any one day. The record fails to show the number or amount of checks so presented, if any, from the morning of the twenty-second to and including the twenty-fourth, other than plaintiff's. November 24, 1932, being a legal holiday, it remained closed upon such date; and, after the issuance of the proclamation by the mayor declaring a moratorium, beginning November 25, 1932, for thirty days, it remained closed until February 6, 1933, at which time the defendant State commissioner of finance took it in charge. It further appears that, until such date of February 6, 1933, such bank and all of its assets remained in charge of its officers and directors, who, during such time, converted some of its assets into cash and made certain disbursements on account of salaries to its officers and employees and for other items; that, on said date and at the time the liquidating bank was taken in charge by the defendant finance commissioner, the plaintiff's deposit of $2714.78 remained in said bank as it was on November 19, 1932, and had thereafter remained, subject to check. Statements of the liquidating bank's financial condition on November 22, 1932, and on February 6, 1933, appear in the record.

On June 10, 1933, plaintiff filed with the deputy commissioner of finance, in charge of the liquidating bank, its verified claim for the total amount of its deposit with said bank at the dates mentioned above in the sum of $2714.78, seeking the allowance of $214.78 thereof as a common claim and of $2500 thereof as a preferred claim or as one entitled to a preference.

It appears that the deputy commissioner in charge approved said claim in the full amount thereof, allowing $214.78 as a common claim and certifying the balance thereof to the circuit court for adjudication as to the preference sought therefor.

Upon a hearing in the latter court, the entire claim was allowed and classified as a common claim; and the classification of any part thereof as preferred or as being entitled to preference was denied; and judgment to such effect was rendered.

From such adverse judgment, plaintiff, after an unsuccessful motion for a new trial, appeals.

## OPINION.

■ It is contended by plaintiff that, because it had to its credit sufficient funds on deposit in the liquidating bank for the payment of

its check on the date it was presented and because such bank had on hand at that time sufficient assets in cash with which to pay it, it became the duty of the liquidating bank to pay such check; that, upon its failure to do so, it thereafter held the amount of plaintiff's check in trust for plaintiff; and that the assets of the liquidating bank, passing into the defendant commissioner's hands and being augmented by the amount of such check, passed impressed with such trust, by reason of which, in the liquidation of the affairs of said bank, plaintiff is entitled to preference to the amount of its check in the order of the payment of its claim over the claims of other depositors not upon the same or some similar basis.

That such contention is well made if, at the time the check was presented, the liquidating bank was open transacting business with its assets and affairs unaffected by liens and process of law and with such in the possession and charge of its officers seems to be the settled law of Missouri. That it is the duty of a bank to pay a check of a depositor upon presentation and demand where such depositor has on deposit to his account a sum sufficient to pay such check has been so often declared by the Supreme Court and other appellate courts of the State that it is no longer to be considered an open question. [Johnson v. Farmers' Bank of Clarksdale (Mo. App.), 11 S. W. (2d) 1090; Claxton v. Cantley (Mo. App.), 297 S. W. 975.]

It is likewise settled that, where the bank fails or refuses to pay a check under such circumstances, it, by operation of law, upon such failure or refusal, holds the depositor's funds to the amount of such check as trustee in trust for the depositor and that the assets of said bank become impressed with such trust and, upon its failure, its assets, augmented thereby, passing into the hands of the finance commissioner, pass impressed with such trust, from all of which the right of preference to the depositor in the payment thereof from the assets of the bank follows and his right to have such claim allowed and classified as one entitled to priority of right in payment upon liquidation of the bank's affairs results. [Bank of Poplar Bluff v. Millspaugh, 313 Mo. 412, 281 S. W. 733; Claxton v. Cantley, supra; Hiatt v. Miller Bank et al. (Mo. App.), 34 S. W. (2d) 532; Commerce Trust Co. v. Farmers' Exchange Bank, 61 S. W. (2d) 928-930.]

■ From the record in this case, it appears that the liquidating bank was open transacting business with its assets and affairs in the hands of its officers at the time the check was presented. It likewise appears that plaintiff had sufficient funds on deposit to its credit, subject to check, with the liquidating bank, to pay the check when presented; that payment thereof was denied; and that the liquidating bank, at the time, had sufficient funds with which to pay it and, so far as the record discloses, to pay all other demands, if any, which

had been or were being presented. Plaintiff thereafter had a lien upon the assets of the liquidating bank in the amount thereof for the payment thereof, subject to immediate enforcement. There is no showing that, at such time, the assets of the liquidating bank were affected by liens or process of law. Its assets passing into the hands of the commissioner were sufficient with which to satisfy plaintiff's claim. It would therefore appear that plaintiff's right to preference became and was complete under the law governing preferences in such cases. The right to preference under the circumstances shown in the record became fixed upon the presentation of the check and the failure of the liquidating bank to pay it. (Authorities supra.)

But, contends the defendant commissioner, said bank, at such time, was insolvent and could not pay such check without preferring plaintiff over other depositors and could not therefore be required to do so. Defendant commissioner further contends that its officers had adopted a resolution, going into effect with the opening of business on the morning of November 22, 1932, that the bank would deny payment of any check drawn against any account of any of its depositors for more than $10 for any one day or checks aggregating more than $10 against any account for any one day and had posted copies and notices of such resolution upon the doors and windows of its place of business and at other conspicuous places; that such, in itself, was an act of insolvency; and that it did thereafter refuse payment of all checks presented in any one day for more than $10. Such, however, did not show inability upon the part of the bank to pay the checks of its depositors in full, as presented or in the order of their presentation, and, therefore, in itself, did not show insolvency; nor was the notice equivalent to that required by law, to the effect that its affairs were in charge of the finance commissioner, which, under our statute, would have been an act of insolvency. [Section 5316, Revised Statutes 1929.] Moreover, the mere fact of the adoption and posting of such notice and the refusal of the bank to pay more than was limited by said resolution did not, in fact, render the liquidating bank or show it to be insolvent within the contemplation of the law when it continued with its assets and affairs in charge of its officers throughout the entire day of November 22, 1932, and thereafter, throughout the twenty-third, transacting its usual business, receiving deposits, and paying checks, even though as limited in its resolution. From November 24, a public holiday, it remained closed with its assets and affairs in the charge and possession of its officers until February 6, 1933, a space of two months and twelve days, when its assets were taken in charge by the defendant finance commissioner for liquidation as an insolvent institution. From November 25 to February 6, while in charge of its officers, its officers reduced certain of its assets,

approximately $25,000, to cash and made certain expenditures from its assets for expenses incurred during such time and other items. It also increased its liabilities in the way of deposits and decreased its liabilities by payment of bills payable.

■ The statutes of this State with reference to banks, subdivision ·3, section 5316, Revised Statutes 1929, provide for the directors and managing officers of such an institution to place its assets and affairs in charge of or under the control of the finance commissioner, which may be done by simply closing its place of business and posting upon the front door of such place of business a notice to the effect that this bank is in the hands of the finance commissioner. When such an institution is placed in charge of the finance commissioner by its directors or is taken in charge by the finance commissioner, its assets are then held in trust for· the benefit of all creditors alike; and it is then that the claims of all depositors become due without demand and not before, and are placed upon the same basis of payment. Section 5318 provides that, when such an institution is found to be in a failing condition, the directors thereof shall immediately place it in charge of the finance commissioner. If, therefore, the said liquidating bank was insolvent upon November 22,· 1934, the course provided by the statute should have been followed. That was the only manner in which plaintiff's right to preference could have been cut out.

■ So long as the liquidating bank remained open in charge of its officers transacting business with sufficient cash assets, unhampered by liens or process of law, to pay checks when presented, drawn by depositors with sufficient funds to their credit to pay them, it was required to pay them as presented. So long as the liquidating bank had sufficient assets with which to pay and remained open transacting business, it could not claim in good faith to be insolvent and refuse to pay. So long as it was open and able to pay, it was required to pay. It could not assert a right of refusal to pay on the ground of insolvency; neither can the defendant commissioner now do so for it or assert a defense based on its insolvency to defeat plaintiff's right to preference under the facts as shown by the record.

■ A bank "is a going concern, in the contemplation of the law, so long as the property of the company remains in its possession, unaffected by liens or process of law." [Alberger v. National Bank of Commerce, 123 Mo. 313, l. c. 319, 27 S. W. ·657.] And, while such condition exists, its right to the management of its affairs continues. (Same.) Its property and business are under the management of its directors. [Revised Statutes 1929, section 5363.] The fact that its assets are chargeable with all its debts and that, while a going concern, its directors are charged with a trust to apply such assets to

all such debts does not affect its right, so long as it acts in good faith, to determine to which of its debts its assets shall be applied or to determine the application and disposition to be made thereof in the usual and ordinary course of its business.

■ It would follow therefore that, by its course of conduct in the management of its affairs, it can lay the foundation for the establishment by its creditors of liens of a preferential nature upon its assets. Upon its failure and consequent cessation of business, its directors continue to hold its assets for the benefit of its creditors and stockholders and, so long as such assets remain in their exclusive possession and control, may reduce them to cash and pay its creditors.

■ The statute law of Missouri determines the time when the right of control of its assets by a bank shall cease; and that time is when, in a failing condition, it places the same in the hands of the finance commissioner for liquidation. [Revised Statutes 1929, sections 5316, 5318.]

Chapter 34, articles 1 to 8 inclusive, constitutes an exclusive code relating to banks and the banking business of the State (Commerce Trust Company v. Farmers' Exchange Bank, supra; Sections 5282 to 5285 inclusive, Revised Statutes 1929; State v. Farmers Exchange Bank (Mo.), 56 S. W. (2d) 129, l. c. 132; Kirrane v. Boone (Mo.), 66 S. W. (2d) 861; Commercial Bank v. Songer (Mo.), 62 S. W. (2d) 903; Commercial Bank v. Songer (Mo. App.), 74 S. W. (2d) 100); and the provisions therein made, above noted, are the only ones by which a bank may be relieved of the management and control of its assets, business, and affairs, even though in a failing condition. Such provisions provide for placing such banks in charge of the finance commissioner for liquidation, it being held, however, that they are sufficiently complied with when the insolvent bank places its affairs and assets, for the purpose of liquidation, with the approval of the finance commissioner, in charge of some other bank or trust company working under his supervision, as in Citizens Trust Company v. Tindle, 272 Mo. 681, 199 S. W. 1025; Exchange Bank v. Turner (Mo.), 14 S. W. (2d) 425; Farmers' State Bank v. Miller (Mo. App.), 300 S. W. 834; but such latter question is not involved herein.

There was no act of insolvency by the liquidating bank within the contemplation of section 5318 or other law, shown to have been made by it, by which plaintiff's right to the payment of his check upon demand was suspended or defeated.

■ It is true that section 5318, Revised Statutes 1929, prohibits any general, voluntary assignment for the benefit of creditors or other assignment after the commission of an act of insolvency by a bank; but, as hereinbefore explained, such question is not involved herein. The question involved in this case is primarily one as to a

right of preference, asserted by a creditor in its own behalf by reason of the failure of the liquidating bank to discharge its obligation to it, as required by law, while the liquidating bank was a going concern and when it had the cash assets with which to pay and was able to pay, under circumstances which fixed plaintiff's right to preference in the order of the payment of its claim; and, under such circumstances, no question of the voluntary assignment of its assets by the liquidating bank is involved. If any question of assignment is involved, it is of a forced character by operation of law, all the circumstances involved conspiring to that end. So long as it was a going concern in possession of its assets and with sufficient cash assets to pay the demands of its creditors as presented, it could be regarded only as solvent (Boone County v. Cantley (Mo.), 51 S. W. (2d) 56); and its action in refusing to pay plaintiff's demand, when it was open and when it had the cash with which to pay, was not an act of bankruptcy. It was a mere arbitrary act and not made in good faith by reason of insolvency, as contemplated by section 5318. Even though by payment of plaintiff's check the liquidating bank would have become insolvent, it was not excused from payment. It could not assert insolvency so long as it was open and able to pay. Neither could its directors for it; nor can the defendant commissioner now so assert for it, at least as a defense to plaintiff's claim for preference.

■ Besides, there is no evidence of insolvency of date November 22, 1932 or, so far as that is concerned, at any other time, except as it may be inferred from the fact that such bank was taken over as insolvent on February 6, 1933, by the finance commissioner, other than its refusal to pay plaintiff's check and others; but, at the time of its refusal to pay plaintiff's check, it had ample funds in cash with which to pay it and was open doing business with its assets in the hands of its officers. It did not refuse to pay because it did not have cash assets with which to pay but arbitrarily refused to pay when able. The statement in the record of its financial condition of date November 22 does not, upon its face, tend to show it insolvent at that date but tends, upon the other hand, to show it solvent and to destroy any inference that otherwise arose from the action of the commissioner and from its refusal to pay. Besides, as shown, its refusal to pay plaintiff's check is not to be regarded as a refusal to pay on the grounds of insolvency, for the reason that it had ample funds with which to pay and was not insolvent, at least in the sense that would excuse from payment. If that it was taken in charge by the defendant finance commissioner on February 6, 1933, may be considered as evidence tending to prove that it was insolvent on November 22, 1932, still, it was open and doing business on that date and had the cash with which to pay plaintiff's check, which, with other

facts in the record before noted, was sufficient to overcome any inference of insolvency on said date arising therefrom and to confer on plaintiff the right to preference as sought.

If solvency, as applied to a bank, means ability to pay its debts in the usual and ordinary course of business, then insolvency perforce means inability to pay its debts in the usual and ordinary course of business. [Boone County v. Cantley, supra.]

■ The action of the board of directors of the liquidating bank, in placing the limit of $10 to be drawn daily from any one account, could not affect plaintiff's right to demand the payment of its check for $2500 or its right to preference therefor upon refusal of its payment, under the facts in this record. The limit thus placed was a mere arbitrary act upon the part of the officers of the bank, without authority of law. If the liquidating bank was insolvent and unable to pay its depositors in the usual course, the only course for it to have pursued was at once to have ceased business and placed its assets with the finance commissioner as the statute directs; for, as long as it remained open, it was required to pay all legal demands as presented, so long as it had cash assets with which it might so do; and, being able to do so, it could not have been insolvent. By the course it pursued, it laid the foundation for its diligent creditors to present their claims for payment in the manner entitling them, by operation of law, to a preference if payment thereof was refused. Equity rewards the diligent.

■ We have considered the points made by the defendant commissioner in his brief and the authorities cited. They relate mainly to insolvency and to the question of when a bank is or is not insolvent and to the right, or lack thereof, of an insolvent to prefer one creditor over another and other related matters, which questions have been discussed herein in the light of such and other authorities. The question here, however, is primarily as to the right of preference, asserted by a depositor under circumstances whereby demand for the payment of its deposit was timely made and so made as, upon refusal thereof, to convert the debtor into a trustee for it, holding its deposit in trust, and whereby the assets of the liquidating bank were impressed therewith.

■ The plaintiff's claim is not affected by the moratorium proclaimed by the mayor of Clinton, referred to in the record. This moratorium was not in effect on November 22, 1932, the date upon which plaintiff's rights with respect to its claim were fixed under the facts existing and by law. It is therefore unnecessary to consider whether such moratorium was legal, illegal, wisely made, or otherwise. Neither is it important to consider for what reason the liquidating bank requested the moratorium or for what it delayed, under cover there-

of, to place its affairs in the hands of the defendant finance commissioner. The plaintiff's rights had became fixed before the moratorium was asked and prior to the delay thereunder. The liquidating bank did not, in any event, close its doors prior to November 24; and, when it did close them, it does not appear to have ceased business and surrendered its affairs into the hands of the defendant commissioner. From November 22 to February 6, many material changes were made, not only with respect to its assets but with respect to its liabilities and resources, which changes a mere comparison of the two statements in the record showing the conditions of its affairs first on November 22, 1932, and later on February 6, 1933, will reveal. Its total resources on the first date were shown to be $599,152.60 as were also its total liabilities, while on the later date they were shown to be $587,607.29, so that it must have been transacting business during the period it now claims to have been closed. During that time, its cash on hand was practically wiped out; its assets in the shape of notes were reduced; its deposits in other banks were practically eliminated; its deposits were increased; and its bills payable reduced.

■ The fact that, during the time from November 24 to February 6, its officers were endeavoring to reorganize it or to secure additional funds, if such be the fact, is no reason why there should have been delay in the placing of its affairs in the hands of the defendant commissioner. Such a reorganization could have been made or additional funds secured, if desired, after its affairs had been placed in charge of the defendant commissioner.

■ The right of a depositor to a preference under the circumstances shown by the record rests upon sound principles and is firmly secured by law; and he cannot be deprived of said right by the arbitrary action of his banker. To hold otherwise and that a bank might refuse to recognize such right would be, in effect, to permit the bank, by continuing in charge of its assets and ostensibly open, ultimately to deprive a depositor of his money on deposit and so to dispose of its assets that the depositor would lose his claim. Such cannot be the law. Neither can it be equity.

■ It appears from what has been said that the court below erred in its judgment refusing preference to plaintiff's claim for $2500 of its deposit in the liquidating bank and that the judgment should be reversed and the cause remanded with directions to enter judgment for preference on such claim in plaintiff's favor. The judgment is, accordingly, reversed; and the cause is remanded with such directions. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed, and the cause is remanded with directions. All concur.