J. T. NICHOLS, RESPONDENT, v. BANK OF SYRACUSE and FRANK C. MILLSPAUGH, COMMISSIONER OF FINANCE OF THE STATE OF MISSOURI, APPELLANTS.

Kansas City Court of Appeals. December 7, 1925.

1.—Banks and Banking—Bank as Agent of Purchaser Held to Have Received Purchase Money in Trust for Vendor. Where vendor deposited deed with bank as agent for purchaser under agreement that deed would be held by it until money was received from loan company when purchase price of farm would be paid him, and gave vendor its promissory note for amount, held money received by bank from loan company after deposit of deed was held by it in trust for vendor.

2.—Evidence—Promissory Note Executed as Result of Fraud Held Memorandum Only, Which Could be Explained to Show That Relationship of General Debtor and Creditor Did Not Exist. Where bank, as agent of purchaser, upon deposit of deed by vendor gave him its promissory note based upon a false statement, acceptance of paper in form of a note did not destroy bank's obligation as trustee but was mere memorandum of what was being done at the time and open to explanation.

3.—Banks and Banking—Trust not Destroyed Because Demand not Made in Technical Language. Where insolvent bank held $6183 in trust for plaintiff, and for which amount it had given him a note, the fact that in demanding his money he did not state the same in technical language and presented note, which technically the bank did not owe, instead of claiming bank held same as trustee, did not make bank debtor and not trustee.

4.—Same—Trust Fund Though Falsely Appearing on Books as General Deposit Held to Augment Assets of Bank. Where bank agreed to pay vendor purchase price of farming out of certain money when received, bank became trustee though assets of bank were not augmented at the time trust relationship arose, but were increased at time money was received, and trust fund never lost its character notwithstanding bank by false bookkeeping made it appear that it was a general deposit.

5.—Same—Fraudulent Entry Held not to Constitute Withdrawal of Trust Fund Entered as General Deposit. Where trust funds were falsely entered by bank as a general deposit and bank president fraudulently made entry on its books showing certain old checks had been paid after trust money had been deposited, when they had been paid before, such entry did not constitute withdrawal of trust fund.

6.—Same—Where General Fund of Bank is Mingled With Trust Fund, Cestui Que Trust Has Lien on Entire Assets of Bank. When all of the money arising from general deposits and from the receipt of trust fund go into one general mass and is used in the general business of bank, whole assets of bank are subject to a lien in favor of cestui que trust.

7.—Trusts—Rule as to Proof of Dissipation of Trust Fund Stated. In order to have been dissipation of trust fund, it must be shown either that fund can be traced specifically and has been dissipated without augmenting funds of trustee, or that general fund with which trust fund was wrongfully mingled has all been dissipated and entire estate of insolvent trustee has arisen from other sources.

8.—Same—Withdrawals from Mingled Funds Presumed to Have Been Made by Trustee From His Own Money. Where fund is made up in part of trus-

tee's own funds and in part of fund held in trust, the trustee's withdrawals from the fund is presumed to have been made from his own money, leaving in the fund not dissipated the money held in trust.

9.—Banks and Banking—Where Trust Fund Was Mingled With General Assets of Bank When it Failed, Presumed Assets Swelled to Extent of Trust Fund and Cestui Que Trust Entitled to Preferred Claim. Where assets of bank at time of failure had not been depleted below amount of trust fund, which had been mingled with its general assets, it will be presumed that assets of bank were swelled to the extent of amount of trust fund, entitling cestui que trust to preferred claim.

Appeal from the Circuit Court of Cole County.—Hon. Henry J. Westhues, Judge.

AFFIRMED.

*Montgomery, Rucker & Hayes* for appellants.

*Lamm & Lamm* and *Paul Barnett* for respondent.

BLAND, J.—This is a claim against the Bank of Syracuse and the Commissioner of Finance who took charge of the affairs of the bank on April 7, 1924, because said bank was insolvent. The bank is now being liquidated and wound up by the commissioner. Plaintiff seeks to have a preferred claim allowed to be paid out of the general assets of the bank in the hands of the commissioner. The court below allowed the full amount of the demand, to-wit, $6183, as a preferred claim. Defendants have appealed.

The facts show that sometime prior to September 25, 1923, one E. L. Nichols, of Morgan county, negotiated with one John Koenke, of said county, in reference to the sale of the former's farm to the latter for $6183. E. E. Poe, president of the Bank of Syracuse, had agreed with Koenke to obtain a loan on the property. The abstract of title had been delivered to Mr. Jones, an attorney at Versailles, Mr. Jones had examined the abstract and found a flaw in the title. It was not a serious defect and could be corrected by bringing a suit to quiet the title. On September 25, 1923, E. L. Nichols, Koenke and Poe were in Jones's office at Versailles when Jones suggested that a suit to quiet the title should not interfere with the sale and that $50 of the purchase price be retained to cover the expense of clearing the title. Poe had negotiated with the Crawford Loan and Abstract Company of Sedalia for a loan of $8,000 on the property. Jones's suggestion was unsatisfactory to

Poe, the latter stating that he could not get the money until the title was quieted. A written contract of sale of the property was thereupon executed between E. L. Nichols and Koenke wherein it was provided that the purchase price should be $6183; $500 of this money was to be deposited in escrow with the First National Bank of Versailles in the form of a certified check, the remainder was to be paid by Koenke as soon as the title should be shown in E. L. Nichols, at which time a warranty deed from said Nichols to Koenke was to be delivered and the certified check cashed by said Nichols. At the time the contract was entered into the property was owned by plaintiff, J. T. Nichols, who was the son of E. L. Nichols, but the record title appeared to be in E. L. Nichols. The deed conveying the farm from father to son was recorded on October 8, 1923, and it is admitted that the contract between the father and Koenke was carried out by the son.

From and after September 25, 1923, Koenke does not appear personally; his part of the transaction being looked after by Poe. On November 24, 1923, plaintiff was in the Bank of Syracuse and there talked with Poe about the matter. Poe told him that he had been unable to get the money from the loan company with which to pay for the property for the reason that the title was not cleared, that he could not get the money until a suit to quiet title had been brought and determined. Whereupon it was agreed between Poe and plaintiff that the latter should sign a deed to the property in favor of Koenke to be deposited in escrow with the Bank of Syracuse to be held by that bank until the title was cleared and the money received by the bank, at which time the money to the extent of the purchase price was to be paid to plaintiff by the bank. The deed was signed and deposited and Poe delivered to plaintiff what plaintiff refers to as a "paper," which was in the form of a promissory note for $6183, in which the Bank of Syracuse agreed to pay plaintiff that sum five months after date with six per cent interest. The note was evidently made out on a printed form with the following in typewriting inserted at the bottom: "This note is to be taken up and interest paid—when abstract is completed and delivered for the E. L. Nichols farm." Plaintiff testified that Poe explained that it would take about five months to cure the title by suit. Afterwards Poe told plaintiff in the presence of Jones that the title would have to be perfected before the money would be paid by the loan company. Plaintiff's deed recited a consideration of $15,000. Poe drew the deed, dating it September 14, 1923, and plaintiff signed it, trusting Poe, without reading it or knowing of this recital. The recital of the false consideration was after the loan company had made the loan and could not have affected that matter. The loan papers were executed on October 1, 1923. The

books and minutes of the Bank of Syracuse did not show that the bank had ever borrowed any money from plaintiff, on November 24, 1923, plaintiff was not doing any business with this bank. There was no understanding that the bank was to have the use of the money when it arrived.

On October 1, 1923, a deed of trust on the farm was executed by Koenke and wife in favor of Grant Crawford of the loan company. This was acknowledged before Poe, a notary public. This deed of trust was filed on November 27, 1923. The warranty deed from plaintiff to Koenke was placed on record on February 25, 1924. This was apparently done by Poe. About that time Poe brought the deed to Jones and instructed him to go ahead and bring suit to quiet the title. The suit was brought on the day the deed was recorded and the decree quieting the title was taken on the 23rd of April, 1924. While this proceeding was brought by Jones as attorney representing plaintiff, it was brought in the name of Koenke because the title at that time was in him. As a matter of fact the statement by Poe that the loan company would not make the loan until the title was clear, was false as will immediately hereinafter appear.

On September 29, 1923, the loan company sent to the Bank of Syracuse the sum of $3500 and on October 4th the sum of $4100, making a total of $7600, which represented the loan on the farm less a commission for making the loan. Although the loan company had done some banking business with the Bank of Syracuse, this was not a general deposit (Harrison v. Smith, 83 Mo. 210; 7 C. J., pp. 631, 632) but the checks were made payable to the Bank of Syracuse and were for the specific purpose of paying Koenke. At the time of the deposit of October 4th, the books of the bank showed that the loan company had a balance of $12,450 in the bank to its credit and on November 24, 1923, at the time plaintiff's deed was deposited in the bank, the books showed that the loan company had to its credit in the bank the sum of $4777.05. At the time the bank closed, the books showed a balance to the credit of the loan company of $296.43. In connection with this we will later show that at the time the deed was deposited by Nichols the $7600 remitted by the loan company to the bank was in the bank. On December 13, 1923, the bank paid Koenke the difference between the $7600 and the amount coming to Nichols. E. L. Nichols never received the $500 placed in the bank at Versailles and neither he nor plaintiff knew that the Bank of Syracuse had received the money to pay off plaintiff until after the bank closed its doors.

It is plaintiff's contention that the bank held the amount of money that was received by the two checks of the loan company,

to the extent of the purchase price of the farm, in trust for plaintiff. We think there is no question but that this was the relation between the parties, at least after the happenings on November 24, 1923. There is no contention but that Poe, as president of the bank, was acting as agent for Koenke in these transactions as this is admitted by the defendants. Under the agreement had between plaintiff and Poe as president of the bank, acting for Koenke, the money received from the loan company, to the extent of the purchase price of the farm, was not to be paid to Koenke but to plaintiff. When the money was received from the loan company, the bank falsely made an entry on its books showing that it was a general deposit and thus attempted to make it appear as to this deposit that the relation of banker and general depositor existed between the bank and the loan company. The money was not treated by the bank as a special deposit but went into the general fund of the bank and thus swelled its assets. Had it not been for the agreement between Koenke and plaintiff, this money would have been the money of the former, but by virtue of that agreement as soon as the money was received (and it was already there) and plaintiff deposited his deed in the bank, thus complying with his part of the agreement with Poe as Koenke's agent, the money became the property of plaintiff. The agreement was that it should be plaintiff's money when it was received and the title cleared up. That part of the agreement relating to the clearing of the title was brought about through the misrepresentations of Poe. As far as the evidence shows no one having any interest in the property or money was asking that the title be cleared up and, of course, that was not a valid condition to the right of plaintiff to have his money. It was merely used by Poe as a scheme to retain plaintiff's money. We think that the transaction should be considered as though that was not a part of the agreement at all.

The relationship of depositor and banker, of course, never arose between the bank and plaintiff; neither did plaintiff by accepting the "paper" in the form of a note transfer the indebtedness of the bank from that of a trustee to a personal indebtedness. The defendants claim that the paper on its face is a note and that it cannot be varied by parol. There was no such objection at the trial and the cause seems to have been tried upon the theory that it could. At any rate, we think that it was competent for plaintiff to explain the paper. It was merely a link in the agreement between Poe and plaintiff. The "note" was executed as the result of fraud. The recitation on its face concerning the payment of the money when the title was cleared was based upon a false statement of facts, and we think that it is to be considered nothing more than a memorandum of what was being done at the time and open to ex-

planation, and that it did not raise the relationship of general debtor and creditor between the bank and plaintiff. [State ex rel. Lad'enberger v. State Bank of Wahoo, 42 Nebr. 896.]

The deputy bank commissioner testified that plaintiff and his father came to the bank shortly after it was closed and told him that they had a note of the bank for $61.83 and wanted to know whether they could get their money; he asked that they bring in the note and told them that it was questionable whether they had any claim. It is insisted that this, together with the paper in the form of a note delivered by Poe to plaintiff at the time he delivered his deed to the bank, shows that the arrangement on November 24, 1923, was that the bank would occupy the position of ordinary debtor and creditor to plaintiff. We think it plain enough what the transaction was. The bank did owe plaintiff the sum of $6183 at the time plaintiff and his father came into the bank after it had closed, and the so-called note was evidence of that fact. The fact that in demanding his money plaintiff did not state his demand in technical language, would not affect the matter. Technically the bank did not owe the note but only the amount of money mentioned in the note, as trustee, of which the alleged note constituted part evidence.

We think there is no question that there was an augmentation of the assets of the bank by these transactions. While the assets of the bank might not have been augmented at the time the bank became a trustee for plaintiff, they were increased when the money was received from the loan company. The fund was a trust fund from the beginning and never lost its character as such although the bank by false bookkeeping made it appear that it was a general deposit. [Bank v. Brightwell, 148 Mo. 358.] The trust fund to the extent of the purchase price of the land was transferred by agreement by placing the deed in escrow with the bank. So we think that plaintiff stands as though he were an assignee of the trust fund, and as the assets of the bank were undoubtedly swelled when the fund came into the possession of the bank, there is no merit in the contention that there was no augmentation of the assets of the bank.

As before stated, the record shows that on November 24, 1923, the loan company had a balance of $4777.05 to its credit in the bank, this was a less sum than the purchase price of the farm. Whether the loan company would have had a right to withdraw the $7600, or any part of it, deposited in the bank before it had been applied to the purpose for which the money was sent, we need not say for the reason that the balance shown by the books to the credit of the loan company was a false one. The record shows that on November 1, 1923, Poe arbitrarily charged the account of the loan company

with three checks, one for $2500, another for $1017.50 and a third for $2805.45, which were not paid by the bank at the time but were old checks which had long since been paid by it when the fund in controversy had come into existence. No question is raised that the loan company did not have enough money on hand to its credit at the time these checks came into the bank to discharge them. On October 3, 1923, the loan company deposited $1,000 in the bank and on November 7, 1923, the sum of $3,000, but these sums were shortly paid over to persons for whom the loan company had transmitted the money to the bank and it is admitted that the bank acted as a mere conduit in these transactions.

It is insisted that plaintiff has failed to show that the assets which augmented the fund of the bank passed into the hands of the commissioner upon the insolvency of the bank. It is contended that "this money was collected eleven months prior to the closing of the bank;" "in the meantime every dollar of the money had been embezzled by Poe or used to pay debts of the bank or withdrawn by checks for the loan company in whose name the account continued to stand." From what we have said it is seen that the checks of the loan company did not withdraw any of the trust money, or attempt to withdraw any of it, except that Poe fraudulently made an entry upon his books showing that certain old checks had been paid after the trust money had been deposited, when they had been paid before. This did not constitute any withdrawal of the trust fund. [Bank v. Brightwell, supra.]

The reference to the embezzlement of Poe has to do with the two checks made by Poe on December 15, 1923. On that day the Bank of Syracuse took over from the Bank of Otterville indebtedness to it of one McFarling and Koenke and paid out the sums of $1009.28 and $1051.34 to the Bank of Otterville on the debts, and charged these sums to the account of the loan company. The loan company did not authorize these transactions and as far as the record shows, neither did McFarling or Koenke. The evidence shows that McFarling and Koenke at the time of the trial were insolvent and unable to pay the loans. There is some question as to whether the Koenke note ever came into the hands of the commissioner. It seems that the McFarling note did. But this was merely an embezzlement, if anything, of the money of the bank and not of the loan company. The money was paid out of the general assets of the bank and Poe could not make it the money of the loan company by a mere entry in the books. [Bank v. Brightwell, supra.] Of course, this occurred long after the trust fund, *pro tanto,* had been transferred to plaintiff, and Poe made no effort to charge any of plaintiff's trust fund with this money so paid out.

When all of the money arising from general deposits and from the receipt of a trust fund go into one general mass and is used in the general business of the bank, as was done in this case, then the whole assets of the bank are subject to a lien in favor of the *cestui que trust*. In order to have been a dissipation of the trust fund, it must be shown either that that fund can be traced specifically and that it has been dissipated, without augmenting the funds of the trustee, or that the general fund with which the trust fund was wrongfully mingled has all been dissipated, and the entire estate of the insolvent trustee has arisen from other sources. [Tufts v. Latshaw, 172 Mo. 359, 373; Stoller v. Coates, 88 Mo. 514; Bircher v. Walther, 163 Mo. 461; Real Estate Co. v. Robinson, 199 Mo. App. 515; Schulz v. Bank of Harrisonville, 246 S. W. 614; Tierman, Ex'r v. Security B. & L. Ass'n, 152 Mo. 135; Horigan Realty Co. v. Flynn, 213 Mo. App. 591.] The evidence shows that at the time of the closing of the Bank of Syracuse on April 7, 1924, it had assets as follows: In cash in its vaults the sum of $1082.72, $100 in Liberty Bonds, $935 in notes secured by mortgages on real estate, and to its credit with corresponding banks, $4275.64; it had on hand notes payable to itself in the sum of $97,976.04 and there were on its books the sum of $4822.57 in overdrafts. Where the fund is made up in part of the trustee's own funds and in part of the fund held in trust, the trustee's withdrawals from the fund is presumed to have been made from his own money, leaving in the fund not dissipated the money held in trust. [Horigan Realty Co. v. First National Bank, 273 S. W. 772; Lowell v. Brown, 280 Fed. 193.] The evidence shows that the assets of the bank had not been depleted below the amount of the trust fund at the time the bank closed its doors, therefore, the trust fund, in the absence of evidence to the contrary, must be presumed to be still mingled with the general assets of the bank and that the assets of the bank are thereby swelled to the extent of the amount of the trust fund.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.