# OCTOBER, 1930.

MATTIE HIATT, APPELLANT, v. MILLER BANK, S. L. CANTLEY, COMMISSIONER OF FINANCE, RESPONDENT.

In the Springfield Court of Appeals. January 15, 1931.

*Robert Stemmons* for appellant.

*Farrington & Curlis* and *Paul W. Barrett* for respondent.

SMITH, J.—On the 5th day of February, 1929, the plaintiff filed her claim for a preference with the commissioner of finance, in charge of the liquidation of Miller Bank of Miller, Missouri. There is no complaint as to the form of the claim or pleadings in this case, therefore we do not set the pleadings out in full, but the plaintiff's claim sets out her theory of the case, and that part which is material here is as follows:

"Mattie Hiatt, of lawful age, being duly sworn, on her oath states that there was due her from the Miller Bank, Miller, Missouri, the sum of four hundred and twenty-five dollars, on October 10, 1928, which amount is now due and unpaid, and for which she is entitled to a preferred claim on account of the following facts, viz.: That she drew her checks for the above amount and delivered the same to the payee thereof, and that said checks were turned into said bank, in the usual course, for payment, and that said checks were in said Miller Bank for a long time prior to the closing of said bank, dishonored and unpaid, but retained by said bank until the closing thereof, when claimant at all times had sufficient money to pay said checks and said bank had on hands at all times sufficient money to pay the same, and that after the closing of said bank, said checks were returned to the payee thereof unpaid, so that claimant

was forced to and did pay the amount of such dishonored checks to the payee thereof. . . . Affiant further states that prior to the closing of said bank she made and executed her negotiable promissory note to said bank for the sum of four hundred and ninety dollars, and that said bank would be entitled to an off-set of credit against this claim for said amount, if said note belongs to and is a part of the assets of said bank, but this affiant is informed and verily believes that the said note was surreptitiously taken from the assets of said bank, immediately prior to the closing thereof by one Dewell, who was an officer of said bank, and that said note is now in the possession of The McDaniel National Bank of Springfield, Missouri, who are claiming to be purchasers thereof from said Dewell, and who are threatening to attempt the collection thereof from this claimant. Affiant further states that there are no other credits or set-offs against this claim in favor of said bank.

"Claimant prays that this claim be approved by the commissioner of finance in charge of said bank, conformable to the laws of Missouri."

The plaintiff in her claim asked for a preference on an additional one hundred dollars which she had deposited a few hours before the bank closed, and for an additional amount allowed as a general claim.

On November 7, 1929, the court rendered judgment denying preference to any part of the claim, and after the court denied the motion for a new trial, proper steps were taken for an appeal to this court.

In her brief and argument the plaintiff does not contend that the court erred in not allowing her claim as a preference for the one hundred dollars deposited a few hours before the bank closed, but directs all her attention to the part of the claim described in the part of the petition heretofore quoted, and to the action of the trial court to that part of the claim only are we concerned.

The facts are very simple, and about which there is no controversy. On September 27, 1928, the plaintiff borrowed from the Miller Bank $490 and deposited the amount in the bank. She gave her note to the bank for that amount, and the note was later held by another party, so she was told, and M. E. Morris, cashier of the Peoples Bank of Miller testified, without objection, that he had it from the McDaniel National Bank that the Hiatt note was there to secure some personal indebtedness of some officers of the Miller Bank. On September 27, 1928, the day plaintiff borrowed the money from the Miller Bank and deposited the amount in said bank she gave three checks on the Miller Bank to Etta Rutherford, introduced as "Exhibit A" for $280; "Exhibit B" for $5; and "Exhibit C" for $43.35. These three checks aggregated $328.35. Each of these checks was endorsed by Etta Rutherford and cashed by the Spring

River Bank of La Russel, Missouri, and each check was endorsed by that bank to the Bank of Aurora on September 29, 1928, and in turn each check was endorsed by the Bank of Aurora to the McDaniel National Bank of Springfield, and endorsed by that bank on October 2, 1928.

The McDaniel National Bank was the correspondent bank of the Miller Bank, and it was agreed by stipulation that the Exhibits A, B, and C, were in the McDaniel National Bank on the 2nd of October, 1928, and on that day endorsed by that bank and transferred to the Miller Bank, and that they were probably received by the Miller Bank on the 3rd day of October, 1928. It was further admitted that at that time the Miller Bank did not have funds in its correspondent bank sufficient to have issued drafts in payment of the remittance in which these checks were sent and of which they were a part.

It was shown by plaintiff's witness that a bank draft is the usual, customary remittance for checks which come through the mail as these had come, and that they are never paid in currency and specie.

The cashier of the McDaniel National Bank testified that these checks reached his bank through the Bank of Aurora, and all were forwarded to the Miller Bank on October 2, 1928, and the testimony was that they reached the Miller Bank on October 3, seven days before the bank closed, and were found there when the bank closed, and each check marked with the words "Bank Closed."

The plaintiff's motion for new trial contained the following assignments:

"First: Under the undisputed evidence in the record the plaintiff is entitled to a preference.

"Second: The court erred in finding for the defendant under the law and the evidence of the case.

"Third: Under the law and the evidence the judgment and decision of the court is for the wrong party."

The plaintiff in her "Points and Authorities" states her position in the following language:

"It is the duty of a bank to pay on demand all checks drawn by depositors on their checking account to the amount of their respective deposits. The fact that plaintiff had on deposit sufficient funds to pay the checks which arrived in the Miller Bank, when it was open and doing business, made it the duty of that bank to honor and pay the checks, and the failure to pay the checks thereafter constituted the bank, and the commissioner of finance in charge of the liquidation of the bank, trustees as respects the right of preference."

She relies upon the decision of the courts in the case of Johnson v. Farmers Bank of Clarksdale, 11 S. W. (2d) 1090, and the case of Claxton v. Cantley, 297 S. W. 975. The respondent attempts to

justify the action of the trial court by the decision in the case of Midland National Bank v. Brightwell, 148 Mo. 385, 49 S. W. 994. In the Bank v. Brightwell case we think the agreed statement of facts are not the same as here. We shall not set out the facts, but in that case the controversy was over a claim for $2650, and the opinion of the court said, "if it can be said that its collection items augmented the assets of the Slater Savings Bank it would seem that there is no escape from the conclusion that it constituted a trust fund," and the court then in its opinion after referring to the facts that the bank issued its own exchange knowing that it had no money in St. Louis with which it could be honored, as well as no money on deposit, used this language: *"The agreed facts fail to show that the Slater Savings Bank had any funds on hand at the time it made this exchange on its books, with which it could have met the checks of the depositors on whom the collections were sent except $449.* In other words if the Slater Savings Bank had received these collections on parties who were not its depositors, it is clear it would not have owed the amount thereof to the Midland National Bank until they were collected, and even had it in anticipation of such collection credited to the Midland Bank with the sum thereof no principle of law or equity would have precluded it from canceling such credit because in fact it had not received the money. In this case it did not receive any money and there was no augmentation of its assets and the agreed statement shows no funds on hand at the time of the book entries except $449. Not a dollar of which is shown to have been received from the depositors owning the several collections.

"When this court has spoken of assets being increased by the reception of a trust fund heretofore, it clearly meant actual assets, not the mere juggling of accounts whereby debts due depositors were transferred to become a debt due a correspondent who sent collections.

"We are not disposed to hold that the mere canceling of a liability to one-debtor and the transferring it to another on the same books is an actual increase of assets.

*"For these transfers to have such an effect there must have been funds in the bank upon which such transfers could have operated."* (Italics ours.)

Such are not the facts in this case. The record shows that the money was on deposit in the bank to the credit of the plaintiff, that her checks were received seven days before the bank failed and held by the bank until it closed and the inventory introduced in evidence showed that when the bank closed it had cash in safe (currency, gold and silver) to the amount of $1802.37. We think the decision in the Midland National Bank v. Brightwell is not authority directing in this case because of the difference in facts, and that the facts

in this case are more nearly in accord with the facts in the cases of Johnson v. Farmers Bank of Clarksdale, 11 S. W. (2d) 1090, and Claxton v. Cantley, 297 S. W. 975. In the case of Claxton v. Cantley, supra, at page 976, we find this language, which we think very much in point here: "The essential facts in this case are that, while the Farmers' & Merchants Bank was a going concern and at the time when Claxton had on deposit therein and the bank had in its hands sufficient funds with which to pay Claxton's check for $1000.70, that check was presented and its payment refused without any legal excuse. In five days thereafter the bank closed. When it closed it had on hand more than $1,000.70. Appellant insists that when this check was presented the relation that existed between Claxton and the bank was that of creditor and debtor, and the refusal of the bank to pay the check did not change that relation, and hence such relation continued until the bank closed and still continues.

"We can see no distinction in principle between this case and the case of Bank of Poplar Bluff v. Millspaugh decided by this court and reported in 275 S. W. 579, and which was afterward approved by the Supreme Court in 281 S. W. 733. In that case a depositor in a bank at Puxico, Missouri, drew a draft against her deposit, payable to the Bank of Poplar Bluff. This draft was presented for payment to the Bank of Puxico, which accepted the same and agreed to pay it, but did not do so. and failed before the payment was made. The bank had on hand money sufficient to pay the draft when it was presented. We held in that case that after the draft was presented the bank at Puxico held the amount of the draft as trustee or agent for the holder of the draft and that fact entitled the party to a preference. The only difference in the facts in that case and this one is that the bank on which the draft was drawn refused to pay the check when it was presented, although it had money on hand sufficient to pay it. We do not think the difference in the facts can change the result. The money having been available with which to pay the check, and the bank having no legal ground for its refusal to pay, it was its duty to pay it. That being true, its refusal to pay was wrongful and the other creditors of the bank should not be allowed to profit, nor should the drawer of the check be made to suffer by the wrongful act of the bank in refusing to pay the check. Had the bank paid the check as it was its duty to do, Claxton would have had $1000.70, and the assets of the bank when it closed would have been $1000.70 less. The legal effect, therefore, of the wrongful act of the bank in refusing to pay the check was to swell the assets of the bank at the time of its closing in the same amount. All that acceptance of the draft and the agreement to pay it by the bank at Puxico in that case meant was that the

bank admitted liability upon the draft. The facts in this case show admission of liability on the check, but the refusal to pay it when presented was based on the contention that the bank was not required to pay until some future time. When that condition is found to be without justification, then the two cases are, in law, exactly alike.''

Testimony was introduced in this case that the liquidating officer had collected sufficient from the assets of the bank to pay the banks holding the collateral placed by the failed bank and to pay about $9,000 of the preferred claims and had about $10,000 then on hand to be distributed on claims. We think under the holding in the case of Johnson v. Farmers' Bank, supra, the trial court should have allowed this claim as a preference. On page 1090 of that opinion we find this language, which we think to the point: ''It is not disputed that plaintiff's money was on deposit in the bank. In the light of the record, it is not necessary to determine whether such deposit was general or special, or the relation created between the parties by the making of such deposit. If it be conceded that the deposit was general, thus creating the relation of debtor and creditor, such relation was changed when the $3,200 check was drawn by plaintiff against such deposit and presented to defendant bank for payment. At that time plaintiff had on deposit and the bank had on hand and on deposit in the First National Bank of St. Joseph, sufficient money with which to pay the check. It was defendant bank's duty to pay the check. [O'Grady v. Stotts City Bank, 106 Mo. App. 266, 80 S. W. 696; Allen Grocery Co. v. Bank of Buchanan County, 192 Mo. App. 476, 182 S. W. 777; Waggoner v. Bank of Bernie, 220 Mo App. 165, 281 S. W. 130; Claxton v. Cantley (Mo. App.), 297 S. W. 975, 976.] It being defendant's duty to pay the check, after its refusal so to do it held the amount of the check as trustee. [Bank of Poplar Bluff v. Millspaugh, 313 Mo. 412, 281 S. W. 733, 47 A. L. R. 754; Claxton v. Cantley (Mo. App.), 297 S. W. 975.] The evidence shows that plaintiff gave the $3,200 check to the Stewartsville State Bank to buy liberty bonds for him. It would be unjust to permit plaintiff to suffer loss, or permit the other creditors of the bank to profit by the wrongful act of the bank in refusing to pay plaintiff's check when presented.''

The respondent contends that since the evidence did not show that the failed bank had sufficient funds on deposit in its correspondent bank with which to pay the draft drawn on it, that the claim should be denied a preference, and cites several cases. We have examined these cases, and we do not gather from them that there must absolutely be sufficient funds in the correspondent bank, if there was in fact sufficient funds in the till of the failed bank out of which the checks in question could have been paid. The testimony shows that when the plaintiff issued her checks she had more than

enough money in the bank to pay, and when the checks were presented her money was still there and the bank refused to pay but held the check for seven days, and when the bank closed there was more money in the bank than required to pay the checks, and under the decisions heretofore referred to, after the bank refused to pay the checks when presented it held the amount of the checks as trustee. And under Johnson case, supra, we think it makes no difference if sufficient funds were not in its correspondent bank, if there were other assets belonging to the bank and out of which the claim can now be paid, for on page 1092 of that case we find this language: "Having already determined that at the time the bank ceased to function as such it held plaintiff's money as a trust fund, plaintiff's right to a preference should not be denied because plaintiff's money was mingled with the general deposits of the bank and converted into assets other than money, when the assets into which such fund had been converted passed into the hands of the commissioner in charge of the bank. [Federal Reserve Bank v. Quigley (Mo. App.), 284 S. W. 164, 167; Nichols v. Bank of Syracuse, 220 Mo. App. 1019, 278 S. W. 793, 795.] In other words, if the bank held plaintiff's money as a trust fund, he is entitled to a preference, on the showing made that the commissioner in charge of the bank received sufficient assets representing such trust fund, whether the assets so received be actual cash or other forms of property. We therefore hold that plaintiff is entitled to a preference although only $1,713.15 in cash was traced into the hands of the commissioner, at the time he took charge of the bank because the commissioner received other assets representing the trust fund from which he realized $57,000 in cash."

It is our opinion that this cause should be reversed and remanded with direction that a judgment be entered allowing that part of the plaintiff's claim, based on the three checks aggregating $328.35 as a preferred claim, and that the balance of her claim be allowed as a general claim.

It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.