BANK OF ILLMO, APPELLANT, v. STURDIVANT BANK, O. H. MOBERLY,
COMMISSIONER OF FINANCE IN CHARGE OF THE LIQUIDATION OF THE
STURDIVANT BANK, RESPONDENT.—89 S. W. (2d) 560.

St. Louis Court of Appeals.   Opinion filed January 7, 1936.

*Ray B. Lucas* for appellant.

*John A. Ferguson* and *R. F. Baynes* for respondent.

HOSTETTER, P. J.—This cause originated in the circuit court of Cape Girardeau County, Missouri, by the plaintiff filing its petition therein on May 11, 1932, setting out its claim for preference against the Sturdivant Bank of Cape Girardeau, Missouri, for the sum of $500. It is conceded that the petition was filed in due time and is in conventional form and that all the antecedent steps were regular and were done in due time as required by the statutes.

The plaintiff bank was located at Illmo, about seven miles from Cape Girardeau. The last day of the life of the Sturdivant Bank was Saturday, November 5, 1932. It did not re-open for business on Monday, November 7, 1932, for the reason that it was that day placed by its board of directors in the hands of the State Finance Department for liquidation.

At the close of business on November 5, 1932, the plaintiff bank had on deposit in defendant bank the sum of $706.96. It filed its claim with the Special Deputy Commissioner for $500 as a preferred claim and for $206.96 as a common claim. The Sturdivant bank, at the time it closed, had sufficient cash and assets in its possession, or in its corresponding bank, far in excess of the $500 claimed as a preference.

We quote the following from the statement made on behalf of respondent, the Sturdivant bank:

"The only question involved in this appeal is whether or not under the facts, the Circuit Court of Cape Girardeau County, Missouri, was justified in denying appellant's application for preference. The conceded facts are that appellant kept an account with the Sturdivant Bank, as a matter of convenience in securing change at times it desired, and that on several occasions it had called Sturdivant Bank by telephone and had money of certain denominations sent to it. In fairness, we are willing to concede that appellant, in telephoning for the money on the occasion mentioned in this cause was along the usual and regular course followed by the appellant and the Sturdivant Bank, but insist that the demand made by appellant for $500 in a particular specie was not a demand for its deposit."

The only oral testimony given in the case was by Charles J. Palisch, cashier of the plaintiff bank, and Theodore Horn, President of the plaintiff bank.

The following facts were shown in the testimony:

The Bank of Illmo had, for two or three years prior to the closing of the Sturdivant Bank, carried an ordinary deposit account in the Sturdivant Bank. Its purpose in carrying this account was because it was handy to get cash and change at times when it wanted it. The usual amount of the account was around $1,000. The custom between the two banks in respect to this account was as follows: The cashier, or some other attache of the Bank of Illmo, would call up by telephone in the morning, during banking hours, usually between nine and ten o'clock, and advise the cashier of the Sturdivant Bank how much money they wanted, and the Sturdivant Bank would send it by mail to the Bank of Illmo and it would reach there that afternoon. No check would be sent, but the practice in the Sturdivant Bank would be that the account would be charged with the amount of money desired and sent, together with the mailing and insuring expense, which would be charged off of the account of the Bank of Illmo. If the deposit account was, say, $1,000, and the Bank of Illmo wanted $500, the telephone request would be made and the money would be sent by mail and the $500 plus the expense, usually $1.00 or thereabouts, would be charged against the $1,000 account, the total charge being covered by a debit slip. Their method of doing business was illustrated by seven debit slips, which were put in evidence, covering a period between August 1, 1932, and October 14, 1932, inclusive. These exhibits show, among other things, one withdrawal of $25 in dimes; another in currency of $500 and silver $100, postage and insurance $1.19; another in currency $300 and silver $200, postage and insurance $1.12. No objection had ever been made on behalf of the Sturdivant Bank by its officers to this method of withdrawing money by telephone, and had been in vogue for the two or three years while the account was carried.

In respect to the $500 in controversy, it was shown that the call by phone was made by Mr. Palisch and the telephone conversation was carried on between him and Mr. Bender, cashier of the Sturdivant Bank. Mr. Palisch testified that he told Mr. Bender to send them $500 in one dollar bills; that Mr. Bender replied that they had a big pay roll that day and couldn't spare the money; that he gave no other reason for not sending the money; that this conversation took place between ten and eleven o'clock in the forenoon of Saturday, November 5; that Bender didn't object to the method of trying to withdraw the money over the telephone but merely said they had a heavy pay roll and couldn't spare it. On cross-examination witness Palisch said: "He (Bender) told me they were having a heavy pay roll to meet and they would not be able to do it; couldn't spare the money," also, "Mr.

Bender didn't say anything with regard to whether or not he could not spare that many one dollar bills. Just said they had a heavy pay roll and could not spare that much that day." The witness further testified: "When we made these telephone calls for requests for money they always paid them upon request made by telephone except that last time. I do not ever recall when I called for money that they did not send it on the day I asked them to." The witness further testified: "there had never been any objection to that method by either one of the banks. The Sturdivant Bank or its employees had never refused to honor our telephone requests for money in this way until the request in question, November 5, 1932, which was on Saturday." He further testified: "Our factory pay rolls at Illmo and Fornfelt were that day. When these checks were presented we usually have to pay them in cash."

Mr. Horn testified that they had been carrying an account with the Sturdivant Bank for the last few years; that the method used by the Bank of Illmo in withdrawing money from the Sturdivant Bank was by telephone; that every morning he made a practice of visiting the bank between nine and eleven o'clock and the first thing he would say was: "Have you plenty of cash on hand?;" that on that particular Saturday morning he asked Mr. Palisch how much cash was on hand and Palisch told him and that he said: "You haven't got enough money for the day, you had better phone up and have them send down $500;" that he heard Palisch's end of the conversation, but that, of course, he did not hear what was said by Mr. Bender; that the Sturdivant Bank never objected to the practice of ordering money over the telephone and that the practice had been in effect for two or three years.

The trial court refused to allow the $500 claim as a preferential one and after an ineffective motion for a new trial the plaintiff, Bank of Illmo, brings the cause to this Court by appeal for review.

It is the universally accepted rule that when a depositor makes an ordinary deposit in a bank the funds received by the bank immediately become the property of the bank and the relation of debtor and creditor exists between the bank and the depositor. The money thus deposited becomes a part of the general fund of the bank, to be dealt with by it as other monies, to be lent to customers, parted with at the will of the bank, and the right of the depositor is to have this debt repaid by the bank in whole or in part, usually by checks given by the depositor drawn against the deposits, and, by common usage and custom it is the duty of the bank, in repaying the funds due to the depositor when requested, to do so in such reasonable denominations as the depositor may require. These are the implied obligations resting upon the bank whenever a general deposit is made by a depositor and such contract between the bank and the depositor, like all other contracts, may be varied according to the intention of the parties.

A bank deposit may be subject to any agreement which the depositor and the bank may make so long as the rights of third persons are not injuriously affected. [Michie on Banks and Banking, Volume 5, page 21.]

In the instant case the testimony adduced on behalf of the plaintiff is uncontradicted. The record shows that Mr. Bender, the cashier of the Sturdivant Bank, was present during the trial, but never took the witness stand. It will be noted that according to the testimony of Mr. Palisch, cashier of the plaintiff bank, Mr. Bender did not base his refusal to comply with the request on the ground that there were not sufficient one dollar bills on hand to do so, but merely based his refusal to comply by saying that they needed the money. Mr. Palisch's language was as follows: "I said to him I wished they would send me down $500 in one dollar bills. He told me they were having a heavy pay roll to meet and they would not be able to do it. Couldn't spare the money. . . . The only thing I said to him was to send me $500 and he then told me he would not be able to. After that I said nothing further to him. . . . Mr. Bender did not say anything with regard to whether or not he could not spare that many one dollar bills. Just said they had a heavy pay roll and could not spare that much that day." From this testimony, which, as stated, was not denied by anyone, although Mr. Bender was present and heard it, and failed to take the witness stand to deny or explain what he meant, the legitimate inference is that he was not basing his refusal on the ground that the request was made to have the money sent in one dollar bills.

It is a matter of common knowledge, that, when a depositor desiring to withdraw a substantial amount of money, usually indicates to the paying teller the denominations he desires to be used in payment. By common usage and custom the request is complied with, and, if the bank cannot supply the amount in the denominations requested, common decency, fairness and courtesy, make it incumbent on the officer of the bank, with whom he is dealing, to tell the depositor that the bank is short on that particular denomination and to suggest such form and denominations as near to the kind the depositor requested and thus give the depositor a chance to collect the money which the bank owes him in such denominations as may most nearly meet his convenience. But Bender did not suggest that he could send it in other small denominations, such as two dollar bills or five dollar bills, if desired. He, being content to let the statement of witness Palisch stand uncontradicted and uncontested and did not take the witness stand to explain, carries with it the usual unfavorable implication which follows such failure to testify. If such be the fact he could have testified that he based his refusal to comply with the demand on the sole ground that he did not have the requisite number of one dollar bills, but, evidently did not desire to place himself in a posi-

tion where he would be subject to cross-examination where he might be interrogated about the imminent demise of the bank as a going concern or explain whether or not his refusal to send the money was due a desire to avoid a further impairment of the legal reserve required to be kept by the provisions of section 5360, Revised Statutes Missouri 1929 (Mo. Stat. Ann., sec. 5360, p. 7584).

It has been held in respect to the determination of priority of payments in this character of case that the rules of equity apply. [In re Cooper County State Bank (Mo. App.), 67 S. W. (2d) 109.]

We feel justified in construing the testimony of witness Palisch, cashier of the Bank of Illmo, as being that the refusal to comply with the request to send the $500 was not based on the fact that it was wanted in one dollar bills and therefore it was a wrongful refusal. We also hold that on account of the long continued method of procedure of dealing between the two banks that the telephone request for the money was the equivalent to a demand made by the presentation of a check. The giving of checks is for the convenience and protection of the bank in its bookkeeping and an oral demand of a depositor made regularly during banking hours is as effective a demand as though it were made by the presentation of a check. [Blackshaw v. French (Mo. App.), 45 S. W. (2d) 916.] So we hold that a proper demand was made on the bank for the money, the $500, and the failure of the bank to comply with the demand created a condition which justifies the allowance of the claim as a preferential one. [Claxton v. Cantley, Commissioner (Mo. App.), 297 S. W. 975; Hiatt v. Miller Bank, 224 Mo. App. 1040, 34 S. W. (2d) 532; Johnson v. Farmers Bank Clarksdale (Mo. App.), 11 S. W. (2d) 1090; Gover v. Cantley (Mo. App.), 56 S. W. (2d) 146; 7 C. J., p. 665; 18 C. J., p. 574; Levy v. New York Commercial Trust Company, 156 N. Y. Supplement 295; Donijanovic v. Hartman, 169 Mo. App. 204, 152 S. W. 424.]

It follows that the judgment of the trial court should be reversed and the cause remanded with directions to enter up a judgment allowing the sum of $500 as a preferential claim against the failed bank and it is so ordered. *Becker* and *McCullen, JJ.*, concur.